NO. 4-09-0283          Filed 12/17/10

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Coles County |
| THOMAS S. RINEHART, | ) | No. 06CF664 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Gary W. Jacobs |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

In December 2007, a jury convicted defendant, Thomas S. Rinehart, of criminal sexual assault, a Class 1 felony (720 ILCS 5/12-13(a)(3) (West 2006)). In February 2008, the trial court sentenced him to 28 years' imprisonment, with 334 days' sentence credit. The written sentencing order did not indicate a mandatory supervised release (MSR) period.

Defendant appeals, arguing (1) he was denied a fair trial where the State improperly questioned the venire, (2) the sentencing judgment should be amended to reflect a two-year term of MSR, and (3) he is entitled to two additional days' sentence credit. We affirm as modified and remand with directions.

I. BACKGROUND

During defendant's December 2007 trial, A.A. (born September 15, 1988) testified that in August 2006, she was helping her mother's boyfriend, defendant, move some friends from Mattoon, Illinois. According to A.A.'s testimony, defendant was

driving her mother's van. A.A. was alone in the van with defendant. Defendant drove the van off of Route 316 onto a small side road. Defendant told A.A., then 17 years old, to get into the back of the van and to take her clothes off. A.A. testified defendant placed his penis in her vagina. Defendant then told A.A. not to tell anybody about what happened. The incident was not reported to police for two to three weeks. At trial, defendant presented no evidence on his behalf.

In December 2007, a jury convicted defendant of criminal sexual assault. The trial court's sentencing judgment reflected defendant's sentence of 28 years' imprisonment and 334 days' sentence credit. However, the sentencing judgment did not include a term of MSR. Thereafter, defendant received a natural-life MSR term from the Department of Corrections (DOC).

In March 2008, defendant filed a motion for reduction of sentence, which the trial court denied.

This appeal followed.

## II. ANALYSIS

On appeal, defendant argues (1) the State's improper questions to prospective jurors asked them to prejudge the victim's credibility and predisposed them to believe her testimony; (2) because defendant was convicted of a Class 1 felony, he should only receive a two-year MSR term; (3) because only the trial court--and not DOC--is authorized to impose sentence, DOC did not have the authority to set his MSR term at natural life; and (4) defendant is entitled to two additional days' sentence

credit because he was not taken into custody until the day after sentencing.

The State argues (1) the prosecutor's questioning during voir dire was proper and (2) defendant's MSR term of natural life was within the correct statutory range, but (3) concedes defendant is entitled to two additional days' sentence credit.

### A. State's Questioning of the Venire

Defendant first argues he was denied a fair trial where the State improperly questioned the venire. We agree the questions were improper but conclude defendant was not denied a fair trial.

### 1. Forfeiture

The State argues, and defendant concedes, defendant failed to properly preserve this issue for appellate review by failing to object to the State's voir dire questions or raise the issue in a posttrial motion. See People v. Coleman, 227 Ill. 2d 426, 433, 882 N.E.2d 1025, 1028-29 (2008). Defendant argues this issue should be considered under a plain-error analysis. However, before determining whether plain error occurred, we must first determine whether any error occurred at all. People v. Owens, 372 Ill. App. 3d 616, 620, 874 N.E.2d 116, 118 (2007).

### 2. Standard of Review

Trial courts have broad discretion in conducting and managing voir dire. People v. Klimawicze, 352 Ill. App. 3d 13, 25, 815 N.E.2d 760, 773 (2004). Accordingly, the standard of

review applied to the manner in which the trial court conducts voir dire is abuse of discretion.  People v. Boston, 383 Ill. App. 3d 352, 355, 893 N.E.2d 677, 680 (2008).  An abuse of discretion occurs where the conduct of the trial court thwarted the selection of an impartial jury.  People v. Gardner, 348 Ill. App. 3d 479, 488, 810 N.E.2d 180, 188 (2004).

### 3. Voir Dire

"A defendant's right to a jury trial mandates a fair trial by a panel of impartial jurors."  People v. Gay, 377 Ill. App. 3d 828, 834, 882 N.E.2d 1033, 1038 (2007).  "The purpose of voir dire is to assure the selection of an impartial panel of jurors free from either bias or prejudice."  People v. Williams, 164 Ill. 2d 1, 16, 645 N.E.2d 844, 850 (1994).  "[V]oir dire questions should confirm a prospective juror's ability to set aside feelings of bias and decide the case on the evidence presented."  Gay, 377 Ill. App. 3d at 835, 882 N.E.2d at 1038. They must "not directly or indirectly concern matters of law or instructions."  Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(a), eff. May 1, 2007.  "[V]oir dire 'is not to be used as a means of indoctrinating a jury, or impaneling a jury with a particular predisposition.'"  Boston, 383 Ill. App. 3d at 354, 893 N.E.2d at 680, quoting People v. Bowel, 111 Ill. 2d 58, 64, 488 N.E.2d 995, 998 (1986).

In this case, the State questioned the venire as follows:

"[MS. KIGER (Assistant State's Attor-

- 4 -

ney):] Can you think of some reasons why a sexual[-]assault victim might not immediately report an incident?

[PROSPECTIVE JUROR:] Why they would not report an incident?

[MS. KIGER:] Right away.

[PROSPECTIVE JUROR:] The victim?

[MS. KIGER:] Correct.

[PROSPECTIVE JUROR:] Well, they probably may say it really didn't happen, and then the falling out with the parents. Maybe there was a relationship, you know, age difference relationship. Then the parents found out about it, convinced, you know. Children are children.

[MS. KIGER:] Can you think of a reason why a victim who had had some things happen to them might not immediately go to an adult or report it?

[PROSPECTIVE JUROR:] Scared."

The State continued questioning other potential jurors as follows:

"[MS. KIGER:] Can you think of some reasons why a victim of sexual assault might not immediately report it to someone?

[PROSPECTIVE JUROR:] Fear, shame.

- 5 -

* * *

[MS. KIGER:] Can you think of a reason why a victim might delay in reporting being raped or being a victim of sexual assault?

[PROSPECTIVE JUROR:] Shame, embarrassment, fear.

* * *

[MS. KIGER:] Can you think of some reasons why a sexual[-]assault victim might not automatically come forward?

[PROSPECTIVE JUROR:] Oh, I think maybe fear, and [thoughts] you would be a lesser person if something like that happened to you.

* * *

[MS. KIGER:] Can you think of some reasons why a sexual[-]assault victim might not immediately report that?

[PROSPECTIVE JUROR:] Yeah.

[MS. KIGER:] Can you tell me what some of those reasons would be?

[PROSPECTIVE JUROR:] Same, fear and scared to come forward."

Defendant argues these questions were not for determining potential juror bias but rather for preeducating jurors as to aspects about the victim's forthcoming testimony and as a means

- 6 -

to engender sympathy for the victim. The State maintains these questions simply inquired about prospective jurors' biases. We find these questions improperly asked jurors to put themselves in the victim's shoes.

In this case, the victim did not immediately report the assault. The State asked prospective jurors whether they could think of any reasons why a sexual-assault victim would not immediately report the assault. The topic was designed to expose whether a juror would automatically perceive a delay in reporting to mean the victim was lying about the incident. A negative response to the State's question could have indicated potential bias against the veracity of the victim's testimony. While questions designed to discover bias are proper, these questions to prospective jurors asked jurors to speculate as to reasons why a victim might not come forward. While the subject could be raised in <u>voir</u> <u>dire</u> through artful questions, the questions asked by the prosecutor crossed the boundary of acceptable <u>voir</u> <u>dire</u>. Since there was no objection, we will consider whether the plain-error doctrine applies.

### 4. <u>Plain</u> <u>Error</u>

The plain-error doctrine, a limited and narrow exception to the general forfeiture rule, permits appellate review of otherwise procedurally forfeited matters. See 134 Ill. 2d R. 615(a). Under the doctrine, this court may review an unpreserved or forfeited error when there is a clear and obvious error that occurs in one of two situations: (1) "the evidence is closely

balanced" or (2) the "error is so serious *** it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." People v. Bannister, 232 Ill. 2d 52, 65, 902 N.E.2d 571, 580 (2008). The defendant carries the burden of establishing plain error; if he or she is unable to do so, "the 'procedural default must be honored.'" Bannister, 232 Ill. 2d at 65, 902 N.E.2d at 580-81, quoting People v. Keene, 169 Ill. 2d 1, 17, 660 N.E.2d 901, 910 (1995).

Defendant cannot prove plain error under either situation. First, the evidence in this case is not closely balanced. Defendant must prove "the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him." People v. Herron, 215 Ill. 2d 167, 187, 830 N.E.2d 467, 479 (2005). At trial, the victim testified defendant drove her to a small side road and sexually assaulted her. She described the offense and the location. Defendant presented no evidence. The evidence was not so closely balanced that the error by itself "severely threatened to tip the scales of justice against" defendant.

Second, defendant cannot prove the "error is so serious *** it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." Bannister, 232 Ill. 2d at 65, 902 N.E.2d at 580. Defendant, citing People v. Bean, 137 Ill. 2d 65, 81, 560 N.E.2d 258, 265 (1990), simply contends the error affects a substantial right and should be reviewed.

- 8 -

Defendant's argument falls far short of establishing plain error. Defendant's lone case on this issue is distinguishable. <u>Bean</u> involves a defendant's claim his absence during <u>in camera</u> <u>voir</u> <u>dire</u> amounted to plain error. <u>Bean</u>, 137 Ill. 2d at 78-81, 560 N.E.2d at 264-65. The court reasoned, although the right to an impartial jury is a substantial right for purposes of plain-error review, "defendant's absence from the <u>in</u> <u>camera</u> <u>voir</u> <u>dire</u> did not, in fact, have the slightest effect on the impartiality of the jury selected." <u>Bean</u>, 137 Ill. 2d at 81, 560 N.E.2d at 265.

In this case, while the <u>voir</u> <u>dire</u> questions crossed the line of propriety, they did not indoctrinate the jury and deny defendant a fair trial. The State's questions, though improper, were not pervasive. In addition, the jurors, during the same questioning, recognized defendant's innocence until proved guilty and asserted they would be impartial. During trial, the jurors heard the victim testify she was afraid to tell her mother, who was defendant's live-in paramour, because she feared her mother would not believe her and would punish her. The jurors did not have to rely on speculation for determining the reason for A.A.'s delay in reporting the offense.

Defendant cannot prove plain error, and his procedural default stands. See <u>Bannister</u>, 232 Ill. 2d at 65, 902 N.E.2d at 580-81.

### 5. <u>Ineffective</u> <u>Assistance</u> <u>of</u> <u>Counsel</u>

Defendant further argues this court should not consider

the voir dire issue forfeited because trial counsel was ineffective for not raising the error before the trial court and preserving the matter for appeal. This argument fails.

To establish his ineffective-assistance-of-counsel claim, defendant must show (1) his counsel's performance was inadequate "in that it fell below an objective standard of reasonableness," and (2) a reasonable probability exists the outcome of the proceeding would have been different absent counsel's deficient performance. People v. Moore, 189 Ill. 2d 521, 535, 727 N.E.2d 348, 355-56 (2000), citing Strickland v. Washington, 466 U.S. 668, 687, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068 (1984). Because defendant must prove both prongs of Strickland to prevail on this claim, we may resolve the issue "solely on the ground that the defendant did not suffer prejudice without deciding whether counsel's performance was constitutionally deficient." People v. Little, 335 Ill. App. 3d 1046, 1052, 782 N.E.2d 957, 963 (2003).

We find defendant cannot show a reasonable probability exists the proceeding's outcome would have been different had counsel objected to the State's voir dire questions. As we reasoned above, the voir dire questions did not deprive defendant of a fair trial. The jurors were provided testimony showing the reason A.A. hesitated in reporting the rape. The jurors stated they could be impartial. Moreover, during closing argument, defense counsel emphasized the reporting delay as a basis for finding defendant not guilty, and the evidence at trial supports

the conviction.

## B. Defendant's MSR Term

Defendant next argues (1) the trial court erred in finding he was required to serve a minimum three-year MSR term, and (2) because the trial court, and not DOC, is authorized to impose sentence, the lifetime MSR term imposed by DOC is void.

### 1. Standard of Review

The imposition of MSR is statutorily required.  See 730 ILCS 5/5-8-1(d)(4) (West 2006).  The proper construction of a statute is a question of law which we review de novo.  See People v. Cardamone, 232 Ill. 2d 504, 511, 905 N.E.2d 806, 810 (2009). "It is well settled that the primary objective of this court when construing the meaning of a statute is to ascertain and give effect to the intent of the General Assembly."  Southern Illinoisan v. Illinois Department of Public Health, 218 Ill. 2d 390, 415, 844 N.E.2d 1, 14 (2006).  The General Assembly's intent is best gleaned from the statute itself, and "where the statutory language is clear and unambiguous, it must be given effect." Orlak v. Loyola University Health System, 228 Ill. 2d 1, 8, 885 N.E.2d 999, 1004 (2007).

### 2. Defendant Is Statutorily Eligible for a Minimum Three Years' MSR

Defendant initially argues the trial court erred in finding he was required to serve a minimum three-year MSR term. Specifically, defendant contends, because he was convicted of a Class 1 felony, he should only serve a two-year MSR term.  We disagree.

Section 5-8-1(d)(2) of the Unified Code of Corrections (Unified Code) provides for a two-year term of MSR for a Class 1 or a Class 2 felony except where the offense is criminal sexual assault. 730 ILCS 5-8-1(d)(2) (West 2006). Where, as here, the offense is criminal sexual assault, section 5-8-1(d)(4) of the Unified Code provides the following:

"for defendants who commit the offense of predatory criminal sexual assault of a child, aggravated criminal sexual assault, or criminal sexual assault *** the term of [MSR] shall range from a minimum of 3 years to a maximum of the natural life of the defendant[.]" (Emphases added.) 730 ILCS 5/5-8-1(d)(4) (West 2006).

Defendant was convicted of criminal sexual assault, a Class 1 felony. Ordinarily, a Class 1 felony would result in two years' MSR. However, the Unified Code provides an exception for criminal sexual assault. As a result, defendant was eligible for a minimum of three years' MSR. Defendant's argument that he should receive two years' MSR fails.

### 3. Authority To Set Defendant's MSR Under Section 5-8-1(d) of the Unified Code

During sentencing, the trial court did not specifically pronounce defendant's MSR term. Instead, the court stated the following:

"I further order that the defendant will serve a period of [MSR] after serving his

- 12 -

sentence as mandated by statute.

Counsel, [it is] a little bit unclear to me what that period would be. There's been some recent legislation that would suggest to me that the applicable time upon the defendant for this offense is not less than three and could be up to natural life, as the statute indicated, regarding the [MSR] period. I don't think I have to make that as part of my finding. It's what [DOC] will impose upon him, but there is a minimum three-year [MSR] period. As I understand the statute, it could be beyond that period."

The written sentencing judgment did not mention MSR. Thereafter, defendant received an MSR term of natural life from DOC.

Defendant argues because the trial court, and not DOC, is authorized to impose his sentence, the lifetime term of MSR is void. We understand defendant's argument to be that upon conviction for criminal sexual assault, the court must sentence the defendant to a specific MSR term within the range of three years to natural life.

The State argues when the trial court fails to include MSR in the sentencing judgment, DOC may impose it. Implicit in the State's argument is DOC also possesses the discretion to determine where within the statutory range defendant's MSR term should fall.

- 13 -

Section 5-8-1(d) of the Unified Code states, "every sentence shall include as though written therein a term [of MSR] in addition to the term of imprisonment."  730 ILCS 5/5-8-1(d) (West 2006).  As previously stated, the MSR term for the offense of criminal sexual assault ranges from a minimum term of three years to a maximum term of the length of defendant's natural life.  See 730 ILCS 5/5-8-1(d)(4) (West 2006).

Section 3-3-8(b) of the Unified Code provides the Prisoner Review Board (Review Board) the power to terminate MSR early.  See 730 ILCS 5/3-3-8(b) (West 2006) ("[t]he *** Review Board may enter an order releasing and discharging one from parole or [MSR], and his commitment to the [DOC], when it determines that he is likely to remain at liberty without committing another offense").  Although the Unified Code authorizes DOC--through the Review Board--to make final determinations involving the actual amount of time a defendant spends under MSR, section 5-8-1(d)(4) specifically designates an MSR sentencing range for the offense of criminal sexual assault.  See 730 ILCS 5/5-8-1(d)(4) (West 2006).  It is implicit in authorizing a sentencing range that the trial court has the authority to sentence a defendant within that range.

In this case, the legislature carved out a limited exception for the crimes listed in section 5-8-1(d)(2).  Every other period of MSR in section 5-8-1(d) is set as a specific number of years by the legislature.  As a result, a trial court could fail to include MSR as part of sentencing and have the

- 14 -

error remedied by operation of law. See 730 ILCS 5/5-8-1(d) (West 2006) ("every sentence shall include as though written therein a term [of MSR] in addition to the term of imprisonment").

However, if the legislature intended for the maximum term of natural life to be automatically included in the sentence for defendants convicted of crimes included in section 5-8-1(d), it would have so stated instead of giving a range. Moreover, to find that defendant's MSR term would be automatically set at an indeterminate range of "three years to natural life" would be inconsistent with the determinate sentence structure of section 5-8-1(a). See 730 ILCS 5/5-8-1(a) (West 2006) ("[e]xcept as otherwise provided in the statute defining the offense, a sentence of imprisonment for a felony shall be a determinate sentence set by the court under this [s]ection").

In addition, the grant of authority to impose the MSR term is structurally located in the section of the Unified Code authorizing the sentencing power of the trial court and not within the section concerning the powers and duties of the Review Board. In fact, nowhere in section 3-3-2 does the legislature grant the Review Board the discretion to determine the range of a defendant's MSR term under section 5-8-1(d)(4). See 730 ILCS 5/3-3-2 (West 2006). Further, while the legislature has authorized the Review Board to promulgate its own rules regarding the conduct of its work (730 ILCS 5/3-3-2(d) (West 2006)), the Review Board has not adopted any rule concerning its discretion to

impose MSR pursuant to section 5-8-1(d)(4). See 20 Ill. Adm. Code §§1610.10 through 1610.180, as amended by 13 Ill. Reg. 3063, eff. February 28, 1989.

We find the legislature intended the trial court have the authority to impose MSR terms for the offenses listed in section 5-8-1(d)(4). Because section 5-8-1(d)(4) contains an MSR term range for criminal sexual assault, the court also possesses the duty to exercise its discretion and impose MSR within that range. The trial court, and not DOC, is in the best position to assess and weigh the factors relevant to determine whether a defendant should serve three years' MSR, natural life, or a term in between. See People v. Stacey, 193 Ill. 2d 203, 209, 737 N.E.2d 626, 629 (2000).

In this case, the trial court was afforded the discretion to determine defendant's MSR term within the range provided for by section 5-8-1(d)(4). The court should have exercised that discretion. If the legislature wanted to give DOC or the Review Board the discretion to determine defendant's MSR term where the court fails to impose MSR, it would have so stated. It did not. As a result, defendant's natural-life MSR term, as imposed by DOC, is void.

We note that once the trial court has set defendant's MSR term, the Review Board retains the power to set the conditions of MSR, and to ultimately reduce or terminate defendant's MSR period where it determines defendant "is likely to remain at liberty without committing another offense." 730 ILCS 5/3-3-8(b)

- 16 -

(West 2006).

We recognize the Second District reached a contrary decision in People v. Schneider, 403 Ill. App. 3d 301, 308-09, 933 N.E.2d 384, 391 (2010). The Schneider court, also interpreting section 5-8-1(d)(4), found the legislature intended trial courts impose an indeterminate MSR sentence and DOC to, therefore, decide when a prisoner may be released from MSR. Schneider, 403 Ill. App. 3d at 308-09, 933 N.E.2d at 391. We respectfully disagree with the holding in Schneider and decline to follow it.

### C. Defendant's Sentence Credit

Defendant last argues he is entitled to two days' additional sentence credit. The State concedes the sentencing error. While defendant argues two days' credit against his sentence are at issue, for reasons that follow we will direct the trial court on remand to add only one day to the sentencing judgment.

Two sentencing errors are alleged in this case. First, defendant argues the date of sentencing should be included because he was not transferred to the custody of DOC until one day after sentencing. Second, defendant argues, not counting the date of sentencing, the trial court gave him credit for 334 days when he was incarcerated for 335 days.

We begin with the issue of whether we will remand to the trial court to apply credit for the day defendant spent in county jail awaiting transfer to DOC custody. As defendant

acknowledges, the case law establishes trial courts should not issue credit for the date of sentencing if the defendant is remanded to DOC custody the same day. People v. Elder, 392 Ill. App. 3d 133, 138, 910 N.E.2d 202, 206 (2009). Defendant distinguishes Elder's holding by emphasizing he was not remanded to DOC custody the same day of sentencing. After pronouncing defendant's sentence, the trial court specifically "remanded [defendant] to the Coles County Safety and Detention Center." Defendant was not taken into DOC custody on February 28, 2008. Instead, he was transported one day later, on February 29, 2008.

If we accept defendant's argument, we give every criminal defendant who is not transferred to DOC on the date of sentencing a sentence-credit issue for appeal. This action is inconsistent with the goal of judicial economy. Trial courts cannot predict or control when DOC will take custody of a criminal defendant after sentencing. They should determine sentencing as if DOC will take custody the day of sentencing. DOC then should add any additional days the defendant remained in custody at the county jail awaiting transfer to DOC's custody in determining the time-served credit to which the defendant is entitled.

In this case, we find no error in the trial court's failure to predict defendant's February 29, 2008, transfer to DOC in calculating the presentence credit. We leave the matter to DOC to include that day in defendant's time-served calculation. Moreover, we note it seems DOC may already be providing the post-sentencing, pre-DOC-custody credit to its inmates' sentences. In

- 18 -

People v. Mitchell, 403 Ill. App. 3d 707, 708-09, 936 N.E.2d 659, 661 (2010), we refused to remand with directions to add five days of credit for time served between sentencing and the defendant's transfer to DOC custody, because the DOC website indicated the defendant had been given credit for those days. Similarly, in this case, the same Web site indicates DOC gave defendant more days' credit than the 334 ordered by the trial court and may have already calculated the day defendant seeks.

Turning to the second issue, both sides agree the remaining days were improperly calculated. The record shows defendant was in custody 36 days from December 29, 2006, through February 2, 2007, and 299 days from May 5, 2007, until his February 28, 2008, sentencing date. Not counting the sentencing date, defendant should have received credit for 335 days. The trial court only awarded credit for 334. Defendant is entitled to one additional day of sentence credit on remand.

### III. CONCLUSION

For the reasons stated, we (1) affirm defendant's conviction; (2) vacate defendant's MSR term; and (3) affirm defendant's sentence as modified but remand with directions to (a) set defendant's term of MSR and (b) amend the sentencing judgment to add one additional day of sentence credit.

Affirmed as modified and remanded with directions.

STEIGMANN and POPE, JJ., concur.