# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. McCurry*, 2011 IL App (1st) 093411

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MATTEL McCURRY, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-09-3411 |
| Filed | November 23, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's convictions for multiple counts of aggravated criminal sexual assault and aggravated domestic battery, the appellate court ordered the mittimus corrected to reflect that two counts of aggravated criminal sexual assault merged with the two remaining counts of aggravated criminal sexual assault based on the fact that only two acts of sexual penetration were committed and that one count of aggravated domestic battery merged with the remaining count of aggravated domestic battery based on the fact that both counts were founded on the victim being burned with an iron, and, furthermore, the trial court's failure to specify a term of mandatory supervised release was corrected by amending the mittimus to reflect a term of three years to natural life. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-14993; the Hon. Kenneth J. Wadas, Judge, presiding. |
| Judgment | Affirmed; mittimus amended. |

Counsel on Appeal

Michael J. Pelletier, Alan D. Goldberg, and Pamela Z. O'Shea, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, and Christine Cook, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE STERBA delivered the judgment of the court, with opinion.

Presiding Justice Lavin and Justice Fitzgerald Smith concurred in the judgment and opinion.

## OPINION

¶ 1    Following a bench trial, defendant, Mattel McCurry, was convicted of four counts of aggravated criminal sexual assault and two counts of aggravated domestic battery. He was sentenced to 27 years in prison. On appeal, defendant contends that (1) two of his four convictions for aggravated criminal sexual assault should be vacated because only two acts of sexual penetration were alleged or proven, and one of his two convictions for aggravated domestic battery should be vacated because the closely related acts supporting the aggravated domestic battery were charged and litigated together; and (2) the trial court's failure to set a specific term for mandatory supervised release (MSR) when sentencing defendant for aggravated criminal sexual assault rendered that portion of the sentencing order void and, thus, this court must remand for the circuit court to set a specific term. For the reasons that follow, we affirm and amend the mittimus.

¶ 2                              BACKGROUND

¶ 3    Defendant was charged by information with four counts of aggravated criminal sexual assault (counts I through IV), two counts of criminal sexual assault (counts V and VI), two counts of aggravated battery (counts VII and VIII) and three counts of domestic battery (counts IX through XI). Defendant's bench trial began on October 15, 2009.

¶ 4    The victim, S.T., testified that in May of 2007 she was living with her son in an apartment where defendant would visit and sometimes spend the night. On May 9, 2007, defendant had spent the night at S.T.'s home. The next morning as S.T. was getting ready for work, defendant found a small address book belonging to her. Defendant started questioning S.T. about the names and the numbers contained in the address book. Defendant proceeded to take S.T.'s cell phone and call one of the numbers in the cell phone's memory. Following the phone call, defendant punched S.T. in the face several times, put her in a headlock and

bit her on her right arm. S.T. testified that defendant then set up the ironing board and plugged in the iron. After the iron got hot, defendant unplugged it, poured hot water from the iron on S.T.'s head and burned her arm with the iron a few times. Defendant then plugged the iron back in and burned S.T.'s arm with it again.

¶ 5    S.T. ran into the kitchen to get ice for the burns. Defendant followed her to the kitchen and told her to go into the bedroom. Defendant then dropped his pants and said, "You know what I want." S.T. testified that she then performed oral sex on him because she was tired of fighting and was scared. Defendant then told her to get up and lay on her stomach. S.T. complied. Defendant then had vaginal intercourse with her until he ejaculated. Defendant asked for S.T.'s car keys. She refused to give him the keys but instead gave him a ride to his grandmother's house. After she dropped him off she went to the police station to fill out a police report. The officer at the front desk told her that because it was a domestic abuse case, she would have to go downtown and file a report there. S.T. testified that she did not say anything about the sexual assault because she did not feel comfortable. S.T. then dropped her son off at school and went to work. After speaking with her relatives, S.T. decided to go to the hospital, where she told a nurse about the sexual assault.

¶ 6    Crystal Carey, a nurse at the hospital, testified that S.T. complained of iron burns and a human bite. Carey noted that S.T. had a human bite mark on her right arm and a "partial thickness burn" consistent with the shape of an iron on her left forearm. Carey treated the wounds and S.T. was then examined by a doctor. As S.T. was about to be discharged, she told Carey that she had also been sexually assaulted. Dr. Gulam Siddiqui testified that he conducted a sexual assault exam on S.T. He stated that the injuries on S.T.'s arms were consistent with her version of the incident. He further testified that the results of her vaginal exam were consistent with both sexual assault and consensual sex.

¶ 7    Defendant was found guilty on all counts and was sentenced to consecutive terms of 10 years each for counts I and II, and concurrent sentences of 10 years each for counts III and IV. Defendant was also sentenced to a consecutive term of seven years for count VII, and a concurrent term of seven years for count VIII. Counts V, VI, IX, X and XI merged and no sentences were imposed. The trial court did not specify the MSR term. On the Department of Corrections (Department) website, defendant's MSR term is shown as "3 Yrs to Life–To Be Determined."[1] Defendant's motion to reconsider sentence was denied and this appeal was timely filed.

¶ 8                                        ANALYSIS

¶ 9    Defendant first contends that two of the aggravated criminal sexual assault convictions and one of the aggravated domestic battery convictions should be vacated under the one-act, one-crime doctrine and the State agrees. The record shows that although defendant was charged with four counts of aggravated criminal sexual assault, only two acts of sexual penetration were committed, namely, vaginal penetration and oral penetration. Similarly,

---

[1]This court may take judicial notice of information on the Department's website. See *People v. Young*, 355 Ill. App. 3d 317, 321 n.1 (2005).

-3-

although defendant was charged with two counts of aggravated domestic battery, both counts were based on the fact that S.T. was burned with an iron. We therefore order that the mittimus be corrected to reflect that counts III, IV and VIII merge with counts I, II and VII, respectively. Ill. S. Ct. R. 615(b).

¶ 10 Defendant next argues that the trial court's failure to set a specific term for MSR when sentencing him for aggravated criminal sexual assault rendered that portion of the sentencing order void and asks this court to remand for the circuit court to set a specific term. The State contends that when the relevant statutes are read in harmony with each other, it is clear that the trial court is required to set an indeterminate MSR term, and the Department then has the authority to determine the ultimate amount of time that the defendant will serve under that term. "Because interpreting statutes presents a question of law, our review is *de novo*." *People v. McKinney*, 399 Ill. App. 3d 77, 80 (2010) (citing *People v. Aleman*, 355 Ill. App. 3d 619, 624 (2005)).

¶ 11 Section 5-8-1(d)(4) of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-1(d)(4) (West 2006)) provides that the MSR term for the offense of criminal sexual assault "shall range from a minimum of 3 years to a maximum of the natural life of the defendant." There is currently a divergence of opinion among the districts of the Illinois Appellate Court on the interpretation of this statutory provision. Compare *People v. Schneider*, 403 Ill. App. 3d 301 (2d Dist. 2010), with *People v. Rinehart*, 406 Ill. App. 3d 272 (4th Dist. 2010).

¶ 12 The primary objective of statutory interpretation is to ascertain and give effect to the intent of the legislature. *People v. Beachem*, 229 Ill. 2d 237, 243 (2008). This inquiry necessarily begins with the language of the statute, "which is the surest and most reliable indicator of legislative intent." *People v. Pullen*, 192 Ill. 2d 36, 42 (2000). The statute should be read as a whole and given its plain and ordinary meaning. *People v. Santiago*, 236 Ill. 2d 417, 428 (2010). Where the meaning of a statute is ambiguous, courts may look beyond the statutory language and consider the purpose of the law, the evils it was intended to remedy, and the legislative history of the statute. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 217 (2008).

¶ 13 Defendant argues that the language in the statute is clear and that a person convicted of criminal sexual assault must be sentenced by the trial court to a set MSR term somewhere between three years and natural life. The State contends that the language in the statute is ambiguous. The *Schneider* court concluded that the statutory provision was ambiguous because it could be interpreted to mean that the trial court should impose an indeterminate MSR term of three years to life, that the trial court should impose a set MSR term somewhere between three years and life, or that the trial court can do either. *Schneider*, 403 Ill. App. 3d at 307. We agree.

¶ 14 The State urges us to employ the doctrine of *in pari materia* and consider the meaning of the provision in section 5-8-1(d)(4) together with the provisions of other statutes dealing with MSR. "Under the doctrine of *in pari materia*, two statutes dealing with the same subject will be considered with reference to one another to give them harmonious effect." *People v. McCarty*, 223 Ill. 2d 109, 133 (2006). If a statute contains ambiguous language, a court may utilize tools of interpretation such as the doctrine of *in pari materia* to ascertain the meaning

of the provision. *People v. Taylor*, 221 Ill. 2d 157, 163 (2006). Thus, we will consider the purpose and legislative history of the statute as well as other statutes related to MSR in our analysis.

¶ 15    As originally enacted in 1973, the Code provided for an indeterminate sentencing scheme, in which both a minimum and maximum sentence within a statutory range would be imposed. See *People v. Choate*, 71 Ill. App. 3d 267, 271 (1979). In 1977, Illinois moved to a determinate sentencing scheme, in which a fixed maximum sentence within a statutory range would be imposed, in order to reduce disparities in sentencing. *Id.*

¶ 16    Terms of MSR are mandated by statute and courts have no authority to withhold the MSR term when imposing a sentence. *People v. Whitfield*, 217 Ill. 2d 177, 200-01 (2005). All MSR terms set by the legislature are for a set number of years, with the sole exception of MSR terms in sexual assault cases. Prior to 2005, all MSR terms for felony convictions were fixed and based on the class of the felony, and this included felonies involving sexual assault. 730 ILCS 5/5-8-1(d)(1) through (d)(3) (West 2004). For example, a Class X felony conviction resulted in an MSR term of exactly three years. 730 ILCS 5/5-8-1(d)(1) (West 2004).

¶ 17    In 2005, the General Assembly amended section 5-8-1(d) to include an exception for the offenses of predatory criminal sexual assault of a child, aggravated criminal sexual assault and criminal sexual assault. For these offenses, the statute was amended to provide an indeterminate MSR term with a range of three years to natural life. Pub. Act 94-165 (eff. July 11, 2005) (amending 730 ILCS 5/5-8-1(d)(4)). At the same time, the legislature added a new section to the Code to address the extended supervision of sex offenders upon their release from custody. Pub. Act 94-165 (eff. July 11, 2005) (adding 730 ILCS 5/3-14-2.5).

¶ 18    Article 3 of the Code (730 ILCS 5/3-3-1 *et seq.* (West 2006)) establishes the Prisoner Review Board (Board) and grants it broad authority over the administration of MSR. Specifically, for those serving extended supervised release terms pursuant to section 5-8-1(d)(4), the Board has the authority to decide the conditions of MSR and the time of discharge from MSR, to impose sanctions for violations of MSR and to revoke MSR. 730 ILCS 5/3-3-2(a)(3.5) (West 2006). In particular, the Board has the authority to enter an order discharging an individual from MSR "when it determines that he is likely to remain at liberty without committing another offense." 730 ILCS 5/3-3-8(b) (West 2006).

¶ 19    The Department is required to supervise each sex offender during the MSR term according to the conditions set by the Board. 730 ILCS 5/3-14-2.5(a) (West 2006). Supervising officers must receive specialized training in the supervision of sex offenders. 730 ILCS 5/3-14-2.5(c) (West 2006). The supervising officer will prepare a progress report beginning 180 days after the offender's release date and continuing every 180 days for the duration of the MSR term, detailing the offender's adjustment and compliance with MSR conditions. 730 ILCS 5/3-14-2.5(b) (West 2006). The statute also provides a mechanism under which offenders who are serving extended MSR terms may request a discharge from supervision. 730 ILCS 5/3-14-2.5(d) (West 2006).

¶ 20    The legislative history indicates that the purpose of the bill amending section 5-8-1 and adding section 3-14-2.5 was to change the way Illinois handled high-risk sex offenders

-5-

because our then-current system failed to take into account the high recidivism rates of sex offenders. 94th Ill. Gen Assem., House Judiciary Comm. on Crim. Law, Feb. 25, 2005 (audio recording of HB 2386, at 1:55:06). The bill was an initiative of the Illinois Attorney General's office. A representative from that office testified before the Senate Judiciary Committee and noted that under this bill, offenders would be supervised for a period of three years to natural life, depending on the risk posed by the offender. 2005 Legis. Bill Hist. IL H.B. 2386 (May 3, 2005). In additional testimony before the House Judiciary Committee on Criminal Law, the representative explained:

> "House Bill 2386 shatters Illinois' one-size-fits-all approach to managing high risk sex offenders. Under this bill, sex offenders who fall into the categories of predatory, aggravated and criminal sexual assault will be supervised on parole *for an indeterminate length of time*, from three years at a minimum, to, in an extreme case, the natural life of an offender, based on three primary areas. One is their adjustment on parole, their compliance with parole conditions, and, importantly, the risk they pose to communities. This bill is intentionally simple and straightforward *and capitalizes on the expertise that's found within the Department of Corrections and the Illinois Prisoner Review Board*." (Emphasis added.) 94th Ill. Gen Assem., House Judiciary Comm. on Crim. Law, Feb. 25, 2005 (audio recording of HB 2386, at 1:55:06).

¶ 21   The court in *Schneider* determined that the legislature's intent in sexual assault cases was to require the trial court to impose an indeterminate MSR term with a minimum of three years and a possible maximum of natural life, and then grant the Department the authority to determine the date of the defendant's release from MSR after the three year minimum. *Schneider*, 403 Ill. App. 3d at 308. The court noted that in using indeterminate language in the 2005 amendment long after it had generally abolished indeterminate sentences, the legislature presumably intended to set an indeterminate MSR term in sexual assault cases. *Id.*

¶ 22   Defendant asks us to adopt the position taken by the *Rinehart* court, which held that the legislature intended for the trial court to exercise its discretion and impose a determinate MSR term within the range provided in the statute. *Rinehart*, 406 Ill. App. 3d at 281. The court reasoned that the trial court, and not the Department, is in the best position to assess and weigh the factors relevant to determine whether a defendant should serve three years' MSR, natural life, or something in between. *Id.*

¶ 23   We respectfully disagree with the holding in *Rinehart* and are in accord with the *Schneider* court. It is clear that the purpose of the 2005 amendment which set an indeterminate MSR term in sexual assault cases was to address the reality that there is no fixed MSR term that can be predetermined by a trial court at sentencing to adequately address the problem of high recidivism rates among sex offenders. It is equally clear that the legislature intended to require MSR terms for sex offenders to be determined on a case-by-case basis, depending on the risk posed by the offender, a risk that can only be determined on the basis of the offender's adjustment upon release and compliance with MSR conditions. This conclusion is supported by the legislature's concurrent enactment of guidelines that specifically address the extended supervision of sex offenders and require the submission of periodic progress reports by specially trained supervisors. Moreover, the legislature

specifically granted the Board the authority to decide the time of discharge for individuals serving an extended supervised release term for criminal sexual assault. See 730 ILCS 5/3-3-2(a)(3.5) (West 2006). Finally, this conclusion is supported by the legislative history in the form of testimony by the Illinois Attorney General's office, the initiator of the bill, that sex offenders who fall into certain categories of sexual assault will be supervised on parole for an indeterminate length of time, utilizing the expertise of the Department and the Board to determine when the MSR term will end.

¶ 24       Although the *Rinehart* court concludes that the trial court, and not the Department, is in the best position to determine the exact term of MSR, it provides no guidance on what specific factors the trial court should consider in making this determination. Moreover, absent clairvoyant capabilities, there is no credible way for the trial court to reasonably predict how a sex offender will adjust to society upon his release from prison, what risk he will pose to the public at that time, and how he will progress in his compliance with the MSR conditions. Indeed, in cases such as the case *sub judice*, where the offender is sentenced to a lengthy prison term, it becomes even more difficult to reasonably so predict.

¶ 25       While, as previously discussed, the Board has the authority to enter an order discharging an individual from MSR "when it determines that he is likely to remain at liberty without committing another offense," we note that section 3-14-2.5 does not provide any authority for the Board to extend the MSR term, even if it determines that the offender continues to pose a risk to the public. Interpreting the provision in section 5-8-1(d)(4) to require the trial court to set a specific number of years of MSR could therefore potentially thwart the intent of the legislature if, for example, the court set the term at the minimum of three years and the Board determined that the offender still posed a risk to the public at the end of the three-year period. The only other mechanism available to the Board in that case would be a revocation of the MSR term. The potential practical effect of interpreting the provision as defendant urges, to require the trial court to set a fixed number of years within the range provided, is that trial courts will err on the side of caution and set terms of natural life by default.

¶ 26       Moreover, such an interpretation would be inconsistent with the statutory scheme related to the imposition of MSR terms. In no other circumstance does the trial court have discretion when imposing the MSR term. Rather, MSR terms are mandated by the legislature and the courts are required to impose them. We do not believe that the legislature intended for circuit courts to exercise discretion in the imposition of MSR terms for sex offenders, when the length of the term so clearly depends on the individual progress and assessment of each offender. Instead, just as in every other case, the legislature has mandated the MSR term for cases involving criminal sexual assault. The difference is that in cases involving criminal sexual assault, the mandated MSR term is indeterminate. For the foregoing reasons, we hold that section 5-8-1(d)(4) requires the trial court to impose an indeterminate MSR term of three years to natural life for sex offenders.

¶ 27       Because we have determined that the trial court has no discretion in imposing the MSR term, it is not necessary to remand for the court to correct the sentencing order. We therefore order that the mittimus be corrected to reflect an MSR term of three years to natural life. Ill. S. Ct. R. 615(b). Accordingly, we affirm the judgment of the circuit court of Cook County and order that defendant's mittimus be amended.

¶ 28        Affirmed; mittimus amended.