# ILLINOIS OFFICIAL REPORTS

## Supreme Court

### *People v. Rinehart*, 2012 IL 111719

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. THOMAS S. RINEHART, Appellee. |
| Docket No. | 111719 |
| Filed | January 20, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The 2005 statutory amendment stating that, for the offense of criminal sexual assault, "the term of mandatory supervised release shall range from a minimum of 3 years to a maximum of the natural life of the defendant" is properly construed to provide for an indeterminate parole term which is under the control of the Department of Corrections and which a sentencing court need not specify in its judgment. |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Coles County, the Hon. Gary W. Jacobs, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |

| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and C. Steve Ferguson, State's Attorney, of Charleston (Michael A. Scodro, Solicitor General, and Michael M. Glick and Katherine D. Saunders, Assistant Attorneys General, of Chicago, and Patrick Delfino, Robert J. Biderman and Luke McNeill, of the Office of the State's Attorneys Appellate Prosecutor, of Springfield, of counsel), for the People. |
| | |
| | Karen Munoz, Deputy Defender, and Colleen M. Morgan, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Springfield, for appellee. |
| | |
| Justices | JUSTICE THEIS delivered the judgment of the court, with opinion. |
| | Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Karmeier, and Burke concurred in the judgment and opinion. |

## OPINION

¶ 1   In 2007, defendant Thomas Rinehart was convicted of criminal sexual assault and sentenced to 28 years' imprisonment. The defendant appealed, and the appellate court affirmed his conviction and sentence, but remanded with instructions for the circuit court of Coles County to select a term of mandatory supervised release (MSR) within the range of three years to natural life contained in section 5-8-1(d)(4) of the Unified Code of Corrections (730 ILCS 5/5-8-1(d)(4) (West 2006)). 406 Ill. App. 3d 272. The State appealed.

¶ 2   The central issue before us, then, is whether the appellate court erred in holding that section 5-8-1(d)(4) requires the trial court to set a determinate MSR term within the statutory range. In his request for cross-relief, the defendant raises the issue of whether the trial court erred in allowing the State to pose various questions during *voir dire*. We affirm the defendant's conviction and sentence, and vacate the appellate court's order on MSR.

¶ 3                                    BACKGROUND

¶ 4   In 2006, the defendant lived with his girlfriend, Hope Scott, and her children, one of which was A.A., a then-17-year-old girl with developmental disabilities. Sometime in August of that year, the defendant borrowed Scott's minivan to help her friends move to Mattoon from Charleston, Illinois. A.A. rode alone with the defendant on one trip. Several weeks later, she told Scott's friends' daughters that the defendant had forced her to have sex in the back of the minivan on the day they moved. Subsequently, the police arrested the defendant, and charged him with criminal sexual assault.

¶ 5   The case proceeded to a jury trial. During jury selection, the parties were permitted to

question venire members pursuant to Supreme Court Rule 431 (Ill. S. Ct. R. 431 (eff. May 1, 2007)). The State asked 5 of the 25 potential jurors who were questioned why a sexual assault victim might delay in reporting an incident. The exchanges between the prosecutor and the jurors were short.

"MS. KIGER [Assistant State's Attorney]: Can you think of some reasons why a sexual assault victim might not immediately report an incident?

MR. WHITE [Prospective Juror]: Why they would not report an incident?

MS. KIGER: Right away.

MR. WHITE: The victim?

MS. KIGER: Correct.

MR. WHITE: Well, they probably may say it really didn't happen, and then the falling out with the parents. Maybe there was a relationship, you know, age difference relationship. Then the parents found out about it, convinced, you know. Children are children.

MS. KIGER: Can you think of a reason why a victim who had had some things happen to them might not immediately go to an adult or report it?

MR. WHITE: Scared.

* * *

MS. KIGER: Can you think of some reasons why a victim of sexual assault might not immediately report it to someone?

MS. FULLER [Prospective Juror]: Fear, shame.

* * *

MS. KIGER: Can you think of a reason why a victim might delay in reporting being raped or being a victim of sexual assault?

MS. HANFT [Prospective Juror]: Shame, embarrassment, fear.

* * *

MS. KIGER: Can you think of some reasons why a sexual assault victim might not automatically come forward?

MR. RALSTON [Prospective Juror]: Oh, I think maybe fear, and think you would be a lesser person if something like that happened to you.

* * *

MS. KIGER: Can you think of some reasons why a sexual assault victim might not immediately report that?

MR. AYERS [Prospective Juror]: Yeah.

MS. KIGER: Can you tell me what some of those reasons would be?

MR. AYERS: Same, fear and scared to come forward."

Defense counsel did not object to any of these questions. The State and the defense each excused one of these jurors, so only three of those five venire members ultimately served on the jury.

-3-

¶ 6    At trial, A.A. testified for the State, and recounted the details of the attack. According to A.A., while she and the defendant were between towns, he pulled the minivan off a familiar state highway and onto an unfamiliar rural side road. He stopped the van and turned off its engine. A.A. could see trees and a fence, and a distant house. She stated that the defendant ordered her to get into the back of the van, where the rear seats had been removed, and take off her clothes. She was scared and complied. She further stated that the defendant joined her there and took off his clothes, then forced her to have sex. Afterwards, they got dressed, and he instructed her not to tell anyone before resuming the trip to Charleston. A.A. identified the defendant as the man who attacked her.

¶ 7    Detective James Hite of the Coles County sheriff's department also testified for the State. He stated that he received a call on August 27, 2006, to investigate a sexual assault by the defendant against A.A. Detective Hite contacted the Department of Children and Family Services, who arranged an interview between a child advocacy center staffer and A.A. He watched the interview and observed A.A.'s demeanor. Detective Hite also took photographs of the site of the attack, which were submitted into evidence by the State.

¶ 8    The defendant presented no evidence on his behalf. The jury found him guilty, and the trial court sentenced him to 28 years' imprisonment, but not to a specific MSR term. Instead, the court stated:

"I further order that the defendant will serve a period of [MSR] after serving his sentence as mandated by statute.

Counsel, [it is] a little bit unclear to me what that period would be. There's been some recent legislation that would suggest to me that the applicable time upon the defendant for this offense is not less than three and could be up to natural life, as the statute indicates, regarding the mandatory supervised release period. I don't think I have to make that as part of my finding. It's what the Department of Corrections will impose upon him, but there is a minimum three-year mandatory supervised release period. As I understand the statute, it could be beyond that period."

The written sentencing judgment also did not mention MSR. Thereafter, the Illinois Department of Corrections calculated the defendant's sentence to include an indeterminate MSR term of three years to natural life. The defendant appealed.

¶ 9    The appellate court affirmed the defendant's conviction, vacated his MSR term, and remanded with directions to set an MSR term within the statutory range. 406 Ill. App. 3d 272. The appellate court first addressed the defendant's argument that the State's questions for prospective jurors asked them to prejudge A.A.'s credibility and predisposed them to believe her testimony, thus denying him a fair trial. The appellate court noted that the defendant had forfeited review of that issue, but considered whether it was plain error. *Id.* at 276. The court concluded that allowing the questions was, indeed, error. According to the appellate court,

"[The questions were] designed to expose whether a juror would automatically perceive a delay in reporting to mean the victim was lying about the incident. A negative response to the State's question could have indicated potential bias against the veracity of the victim's testimony. While questions designed to discover bias are

-4-

proper, these questions to prospective jurors asked jurors to speculate as to reasons why a victim might not come forward. While the subject could be raised in *voir dire* through artful questions, the questions asked by the prosecutor crossed the boundary of acceptable *voir dire*." *Id.*

¶ 10 The appellate court, however, refused to excuse the defendant's procedural default. First, the court held that the evidence in this case was not closely balanced. *Id.* at 277. The State, through A.A.'s testimony, presented evidence of the attack and its location, while the defendant presented no evidence. *Id.* Second, the court held that the error did not affect the fairness of the trial. *Id.* The appellate court stated:

> "[W]hile the *voir dire* questions crossed the line of propriety, they did not indoctrinate the jury and deny defendant a fair trial. The State's questions, though improper, were not pervasive. In addition, the jurors, during the same questioning, recognized defendant's innocence until proved guilty and asserted they would be impartial. During trial, the jurors heard the victim testify she was afraid to tell her mother, who was defendant's live-in paramour, because she feared her mother would not believe her and would punish her. The jurors did not have to rely on speculation for determining the reason for A.A.'s delay in reporting the offense." *Id.*

The appellate court further held that the defendant did not receive ineffective assistance of counsel because he could not show prejudice from his attorney's failure to object to the State's questions. *Id.* at 278.

¶ 11 The appellate court then addressed the defendant's argument that the trial court erred in not sentencing him to an MSR term within the statutory range. The appellate court concluded that the Unified Code of Corrections contains a determinate sentence structure, and an indeterminate MSR term is inconsistent with that structure. *Id.* at 280-81. Additionally, the court noted that the Code grants the trial court, not the Prisoner Review Board, the power to impose an MSR term. *Id.* at 281. According to the appellate court, "Because section 5-8-1(d)(4) contains an MSR term range for criminal sexual assault, the court also possesses the duty to exercise its discretion and impose MSR within that range. The trial court, and not DOC, is in the best position to assess and weigh the factors relevant to determine whether a defendant should serve three years' MSR, natural life, or a term in between." *Id.* The appellate court acknowledged that *People v. Schneider*, 403 Ill. App. 3d 301 (2010), reached the opposite result, but declined to follow that case. *Id.* at 281-82.

¶ 12 This court granted the State's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Feb. 26, 2010). In his response brief, the defendant requested cross-relief, contending that the trial court erred in allowing the State's *voir dire* questions.

¶ 13                                    ANALYSIS

¶ 14 If the defendant succeeds on the issue raised in his request for cross-relief, he would be entitled to a new trial. Thus, we will address that issue first. Because defense counsel did not object to the State's questions, our discussion begins with plain error.

¶ 15 The plain-error doctrine offers criminal defendants a narrow path to appellate review of procedurally forfeited trial errors. *People v. Walker*, 232 Ill. 2d 113, 124 (2009). As a matter

of convention, a prerequisite–or as we have previously termed it, an initial or first step (see *People v. Hudson*, 228 Ill. 2d 181, 191 (2008); *People v. Kitch*, 239 Ill. 2d 452, 462 (2011))–toward applying that doctrine is the existence of an error. *People v. Sargent*, 239 Ill. 2d 166, 189 (2010). Thus, we must determine whether the trial court erred in allowing the State to ask certain venire members about their views on sexual assault allegations in which there was a delay between an incident and the reporting of it.

¶ 16    The constitutional right to a jury trial encompasses the right to an impartial jury. See *Irvin v. Dowd*, 366 U.S. 717, 721 (1961). The trial court is primarily responsible for initiating and conducting *voir dire* (*People v. Strain*, 194 Ill. 2d 467, 476 (2000)), though it must permit the parties to supplement its examination "by such direct inquiry as the court deems proper," pursuant to Rule 431 (Ill. S. Ct. R. 431 (eff. May 1, 2007)). Because there is no precise test for determining which questions will filter out partial jurors (see *People v. Washington*, 104 Ill. App. 3d 386, 390 (1982)), the manner and scope of the examination rests within the discretion of the trial court, and we review such decisions for an abuse of discretion. An abuse of discretion occurs when the conduct of the trial court thwarts the purpose of *voir dire* examination–namely, the selection of a jury free from bias or prejudice. *People v. Williams*, 164 Ill. 2d 1, 16 (1994); *People v. Cloutier*, 156 Ill. 2d 483, 495-96 (1993) ("[t]he purpose of *voir dire* is to ascertain sufficient information about prospective jurors' beliefs and opinions so as to allow removal of those members of the venire whose minds are so closed by bias and prejudice that they cannot apply the law as instructed in accordance with their oath"); see also *People v. Clark*, 278 Ill. App. 3d 996, 1003 (1996) ("The purpose of *voir dire* is to enable the trial court to select an impartial jury and to ensure that the attorneys have an informed and intelligent basis on which to exercise peremptory challenges."). Stated differently, a trial court does not abuse its discretion during *voir dire* if the questions create "a reasonable assurance that any prejudice or bias would be discovered." *People v. Dow*, 240 Ill. App. 3d 392, 397 (1992).

¶ 17    Accordingly, *voir dire* questions, whether asked by the trial court or by the parties with the sanction of the court, must not be "a means of indoctrinating a jury, or impaneling a jury with a particular predisposition." *People v. Bowel*, 111 Ill. 2d 58, 64 (1986). Rather than a bright-line rule, this is a continuum. Broad questions are generally permissible. For example, the State may ask potential jurors whether they would be disinclined to convict a defendant based on circumstantial evidence. See *People v. Freeman*, 60 Ill. App. 3d 794, 799-800 (1978). Specific questions tailored to the facts of the case and intended to serve as "preliminary final argument" (*People v. Mapp*, 283 Ill. App. 3d 979, 989-90 (1996)) are generally impermissible. But see *People v. Faulkner*, 186 Ill. App. 3d 1013 (1989) (holding that the State may inquire whether venire members have deep-seated beliefs that prevent them from returning a guilty verdict in a murder case where the State cannot produce direct evidence of the victim's body).

¶ 18    The defendant argues, tracking the appellate court's analysis below, that the State's questions did not seek to uncover bias but, rather, sought to preeducate potential jurors on an aspect of A.A.'s expected testimony, and thereby bolster her credibility. According to the defendant, the State encouraged potential jurors to imagine why A.A. would not have told anyone about the incident when it happened, and thus empathize with her. The defendant

-6-

directs our attention to *People v. Bell*, 152 Ill. App. 3d 1007 (1987), and *People v. Boston*, 383 Ill. App. 3d 352 (2008).

¶ 19   In *Bell*, the defendant was charged with the murders of his parents. During *voir dire*, the State asked a majority of the potential jurors whether they believed that people have a natural impulse to confess their wrongdoings, and whether they believed that a person could carry out a plan to murder a family member as a solution to problems in that relationship. The defendant did not object to these questions. He was convicted. On appeal, the appellate court chose to address the issue on the merits, and held that the questions were improper "because they served primarily to indoctrinate the jurors as to the State's theory at trial and asked them to prejudge the facts of the case." *Bell*, 152 Ill. App. 3d at 1017.

¶ 20   In *Boston*, the defendant was charged with criminal sexual assault of his girlfriend. During *voir dire*, the State asked all of the potential jurors whether they believed that the government should not become involved in domestic incidents; whether they believed that a woman who obtains an order of protection against a man, and then invites that man to her home, has given implied consent to a subsequent sex act with the man, and has made herself responsible for any subsequent violence with the man; and whether they believed that a woman consents to a sex act if she does not scream or fight while she is being assaulted. The defendant did not object to these questions. He was convicted. On appeal, the appellate court did not discuss forfeiture, and simply noted that the evidence was closely balanced. *Boston*, 383 Ill. App. 3d at 356. The court held that the questions were improper because they "highlighted factual details about the case and asked prospective jurors to prejudge those facts," and concerned matters of law or instruction, which are not appropriate areas of inquiry under Rule 431(a). *Id.* at 355.

¶ 21   The questions in this case differ from those in *Bell* and *Boston*. Unlike the questions in those cases, the questions here were less fact-driven, and more focused on potential jurors' preconceptions about sexual assault cases, in an effort to uncover any bias regarding delayed reporting and the credibility of a victim who informed no one about the alleged attack when it happened. An answer which indicated a juror was less likely to believe a victim who did not immediately report an incident would have given the State grounds to exercise intelligently its peremptory challenges. The questions were brief, and the State did not elaborate on the subject, but instead accepted the answers it received and factored them into the decision on which jurors to excuse. Further, unlike the State in *Bell* and *Boston*, the State here did not ask every potential juror about this subject, and instead posed a question on it to only five potential jurors, one-fifth of the venire. Although we agree with the appellate court that the subject could have been raised more artfully (406 Ill. App. 3d at 276), and perhaps phrased in terms of a venire member's bias and ability to put any bias aside in reaching a verdict, we cannot say that the trial court abused its discretion. Because there was no error, the defendant's procedural default must stand. *Kitch*, 239 Ill. 2d at 465.

¶ 22   Additionally, because there was no error, the defendant's ineffective assistance of counsel contention must fail. Defense counsel's failure to object to *voir dire* questions which the trial court did not abuse its discretion in allowing was not objectively unreasonable. *People v. Manning*, 241 Ill. 2d 319, 326 (2011).

-7-

¶ 23 We turn to the issue raised by the State in its appeal, whether the appellate court erred in holding that section 5-8-1(d)(4) of the Unified Code of Corrections requires the trial court to set a determinate MSR term within the statutory range. Resolution of this issue is a matter of statutory construction, and our review proceeds *de novo*. *People v. Cordell*, 223 Ill. 2d 380, 389 (2006).

¶ 24 The primary objective of statutory interpretation is to ascertain the intent of the legislature. *Brucker v. Mercola*, 227 Ill. 2d 502, 513 (2007). The plain language of the statute is the best indication of that intent, and if that language is clear and unambiguous, it must be given effect. *People v. Christopherson*, 231 Ill. 2d 449, 454-55 (2008).

¶ 25 Section 5-8-1(d) of the Unified Code of Corrections requires that "every sentence shall include as though written therein a term [of MSR] in addition to the term of imprisonment." 730 ILCS 5/5-8-1(d) (West 2006). Section 5-8-1(d)(4) provides that the MSR term for certain sex offenses, including criminal sexual assault, "shall range from a minimum of 3 years to a maximum of the natural life of the defendant." 730 ILCS 5-8-1(d)(4) (West 2006). That section does not indicate whether the trial court should choose a term within that range, or whether the term is the range itself. The statute may be read either way, and its plain language does not indicate the legislature's intent.

¶ 26 If a statute's language is unclear or ambiguous, if it is susceptible of more than one reasonable reading, we must resort to other sources to aid our inquiry. See *People ex rel. Department of Professional Regulation v. Manos*, 202 Ill. 2d 563, 571 (2002). Such sources include the maxim of *in pari materia*, under which two statutes, or two parts of one statute, concerning the same subject must be considered together in order to produce a "harmonious whole." *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992). Words and phrases should be construed, not in isolation, but in light of other relevant provisions. *People v. Beachem*, 229 Ill. 2d 237, 243 (2008). "[W]e consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it." *People v. Cardamone*, 232 Ill. 2d 504, 512 (2009); *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 280 (2003) ("in determining the intent of the General Assembly, we may properly consider not only the language of the statute, but also the purpose and necessity for the law, the evils sought to be remedied, and goals to be achieved").

¶ 27 Section 5-8-1(d)(4) was part of Public Act 94-165 (eff. July 11, 2005), which amended various sections of the Code, including section 3-3-2, and added section 3-14-2.5. Section 3-3-2(a)(3.5) provides that the Prisoner Review Board shall "hear *** and *** decide[ ] the conditions of mandatory supervised release and the time of discharge from mandatory supervised release, *** impose sanctions for violations of mandatory supervised release and revoke mandatory supervised release for those serving extended supervised release terms pursuant to paragraph (4) of subsection (d) of Section 5-8-1." 730 ILCS 5/3-3-2(a)(3.5) (West 2006).

¶ 28 Section 3-14-2.5, titled "Extended supervision of sex offenders," provides:

"(a) The Department shall retain custody of all sex offenders placed on mandatory supervised release pursuant to clause (d)(4) of Section 5-8-1 of this Code and shall supervise such persons during their term of supervised release in accord

with the conditions set by the Prisoner Review Board pursuant to Section 3-3-7 of this Code.

(b) A copy of the conditions of mandatory supervised release shall be signed by the offender and given to him or her and to his or her supervising officer. Commencing 180 days after the offender's release date and continuing every 180 days thereafter for the duration of the supervision term, the supervising officer shall prepare a progress report detailing the offender's adjustment and compliance with the conditions of mandatory supervised release including the offender's participation and progress in sex offender treatment. The progress report shall be submitted to the Prisoner Review Board and copies provided to the chief of police and sheriff in the municipality and county in which the offender resides and is registered.

(c) Supervising officers shall receive specialized training in the supervision of sex offenders including the impact of sexual assault on its victims.

(d) Releasees serving extended mandatory supervised release terms pursuant to subsection (d) of Section 5-8-1 of this Code may request discharge from supervision as provided by subsection (b) of Section 3-3-8 of this Code. Requests for discharge from extended mandatory supervised release shall be supported by a recommendation by the releasee's supervising agent and an evaluation of the releasee completed no longer than 30 days prior to the request for discharge from supervision. The evaluation shall be conducted by a Sex Offender Management Board approved sex offender evaluator and shall be at the releasee's expense." 730 ILCS 5/3-14-2.5 (West 2006).

¶ 29        Public Act 94-165 created a comprehensive scheme regarding MSR for certain sex offenses, which marked a philosophical and procedural change in how parole operates for defendants convicted of such offenses. The appellate court here noted that the General Assembly "carved out a limited exception for the crimes listed in section 5-8-1(d)[(4)]" (406 Ill. App. 3d at 280), but refused to give that decision any weight, and instead focused on a purported inconsistency between section 5-8-1(d)(4) and the otherwise determinate sentence structure of section 5-8-1(a). The *Schneider* court saw the impetus behind section 5-8-1(d)(4) more clearly: "Presumably the legislature, in using indeterminate language with regard to the MSR term long after it generally abolished indeterminate sentences, specifically intended indeterminate MSR terms in sexual assault cases." *Schneider*, 403 Ill. App. 3d at 308. The legislature abandoned the structure of determinate MSR terms accompanying other offenses and adopted a structure of indeterminate or "extended" MSR terms for sex offenses precisely because it viewed sex offenses differently, due to the risk of recidivism. See 94th Ill. Gen. Assem., House Proceedings, March 10, 2005, at 82-83 (statements of Representative Gordon) (this legislation "creates lifetime supervision for high-risk sex offenders").

¶ 30        Further, under section 3-14-2.5(b), a sex offender's parole officer must prepare a progress report every 180 days, and under section 3-14-2.5(d) the offender may request discharge from MSR upon the recommendation of the officer. These provisions contemplate indeterminate MSR terms, not determinate terms. The appellate court was incorrect in vacating the defendant's MSR term. We affirm the defendant's conviction, and vacate the appellate

court's order on the issue of MSR. The defendant's MSR term is an indeterminate three years to natural life.

¶ 31                                    CONCLUSION

¶ 32        For the reasons that we have stated, the judgment of the appellate court is affirmed in part and vacated in part.

¶ 33        Affirmed in part and vacated in part.