NO. 4-06-0010     Filed 12/28/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| ANTHONY GAY, | ) | No. 04CF13 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert M. Travers, |
| | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the opinion of the court:

In January 2004, the State charged defendant, Anthony Gay, with two counts of aggravated battery (720 ILCS 5/12-4(b)(6) (West 2000)).  On March 3, 2004, defendant filed a speedy-trial demand.  After a November 2005 trial, a jury found defendant guilty of aggravated battery.  Defendant filed two posttrial motions.  At a joint December 2005 hearing, the trial court denied defendant's motions and sentenced him to 6 years' imprisonment to run consecutive to his sentences in 12 other cases.

Defendant appeals, contending (1) his speedy-trial right was violated and (2) the trial court erred by failing to hold an in camera questioning of two jurors on the names of their friends who were correctional officers.  We affirm.

I. BACKGROUND

Defendant was first sentenced to the Department of Corrections (DOC) for seven years on a 1994 robbery conviction.  Since being imprisoned, defendant had accrued numerous aggravated-battery convictions.  In this case, case No. 04-CF-13

(case 13), the State charged defendant with aggravated battery on January 20, 2004, for a January 23, 2001, incident, in which defendant struck a correctional officer. When defendant was charged in this case, he had 10 other pending aggravated-battery cases in Livingston County, case Nos. 03-CF-59 (case 59), 03-CF-60 (case 60), 03-CF-61 (case 61), 03-CF-62 (case 62), 03-CF-146 (case 146), 03-CF-172 (case 172), 03-CF-269 (case 269), 03-CF-298 (case 298), 03-CF-299 (case 299), and 03-CF-318 (case 318).

On March 3, 2004, pursuant to the intrastate detainers statute (730 ILCS 5/3-8-10 (West 2004)), defendant made a pro se demand for a speedy trial in cases 146, 172, 269, 298, 299, 318, and 13. We note that, on July 1, 2003, defendant had made a speedy-trial demand in cases 59, 60, 61, 62, and 146. On April 28, 2004, the trial court held a pretrial hearing on defendant's pending cases, including this one. At that hearing, defendant's fitness was questioned, and the court ordered a fitness examination in this case, the 10 original pending cases, and 2 newly acquired cases, Nos. 04-CF-24 (case 24) and 04-CF-63 (case 63). On May 26, 2004, the court entered a written order for an examination to determine defendant's fitness.

On January 12, 2005, Judge Harold Frobish entered a case-management order due to the retirement of Judge Charles Frank, who had presided over 21 cases involving defendant. The order showed that, due to the unresolved issue of defendant's fitness, sentencing remained pending in cases 60, 61, and 62, and the other 10 cases, including this one, were still awaiting

- 2 -

trial.

On February 2, 2005, in 13 cases, including this one, defense counsel filed a motion for psychiatric examination, which the trial court granted. After a March 16, 2005, fitness hearing, the court found defendant fit to proceed on his pending cases, and defendant discharged his attorney. At the hearing, the court also set for June 8, 2005, a joint sentencing and pretrial hearing on defendant's pending cases. On March 28, 2005, defendant filed a pro se motion for substitution of the judge in all of his pending cases, which the court granted that day and kept June 8, 2005, as the next hearing date. On April 7, 2005, defendant filed another motion to substitute the judge. Three months later, the court heard the substitution motion and denied it. The court set a hearing on all pending matters for July 22, 2005.

On July 22, 2005, the trial court sentenced defendant in cases 60, 61, and 62. On August 30, 2005, the court commenced the trial in case 172. On November 1, 2005, the State announced ready for trial in this case. At defendant's request, the court set the trial for November 7, 2005. On November 7, 2005, the court commenced defendant's trial in this case.

During voir dire, jurors Rients and Gibson indicated they had friends that worked at the Pontiac Correctional Center (Pontiac). When the trial court asked if the jurors would reveal their friends' names, Gibson did not respond, and Rients declined to disclose any names. Both jurors did indicate their friends

were correctional officers. Defendant declared he wanted to know the friends' names. The court asked the jurors if they knew whether their friends had been involved in this particular complaint or in the investigation of this type of thing, and the jurors replied they did not really discuss it with them. The court further asked the jurors if they were concerned about some type of retaliation or problem against their friends if they sat as jurors in this case, and both jurors responded in the negative. The court concluded defendant could ask about specific names of people who might be a problem in this case but it would not make the jurors reveal their friends' names. Defendant did not respond, and the court had all of the potential jurors removed from the courtroom.

Outside the jurors' presence, defendant indicated he needed to know the friends' names because he had been accused in 21 cases and had 12 trials and naming 50 people would be too difficult. Defendant needed to know the friends' names so he could determine if they had been involved in or investigated any of his cases. Defendant asked the two jurors to be excused for cause, and the trial court denied his request. The jurors were then returned to the courtroom, and defendant was allowed to question them.

Defendant asked Rients and Gibson if the fact they would not reveal their friends' names meant they thought he was guilty, and they replied in the negative. Defendant then asked the pair why they did not want to reveal their friends' names,

and Rients replied because he did not think there was any reason to bring their names into this case. At defendant's request, the court read the names of the potential witnesses in this case, and Rients and Gibson indicated they did not know any of those people. The court also asked whether the fact their friends' worked at Pontiac would affect their ability to be fair and impartial, and the jurors responded in the negative. Defendant then asked how long their friends had worked at DOC. Rients responded he did not know, and Gibson said at least five years. Both jurors indicated that, if the evidence showed defendant did not commit the crime for which he was accused, they could find him not guilty. Both jurors also indicated they were not worried about their friends taunting them if the jury found defendant not guilty.

After defendant concluded his questioning of Rients and Gibson, he again asked they be excused for cause, and the court denied his request. We note defendant had already exhausted his peremptory challenges and did not request any additional ones. The State accepted Rients and Gibson as jurors, and they were two of the jurors that heard defendant's case.

At the conclusion of the trial, the jury found defendant guilty as charged. On November 22, 2005, defendant filed a motion for an arrest of judgment, challenging the wording of the State's charges against him. He also filed a motion for a new trial, asserting, inter alia, the trial court should have allowed defendant to obtain the names of Rients's and Gibson's

correctional-officer friends or excused them for cause. In December 2005, the court held a hearing on defendant's motions and sentencing. The court denied the motions and sentenced defendant as stated. In addressing defendant's posttrial argument about jurors Rients and Gibson, the court noted two instances in other cases were defendant had written letters to jurors after the verdict. Thus, the court felt good reason for caution existed. This appeal followed.

## II. ANALYSIS

### A. Speedy Trial

Defendant first asserts he was denied his speedy-trial right because he was not brought to trial in case 172 in the relevant speedy-trial period, which renders all of the other cases included in his speedy-trial demand also untimely. The State contends (1) this issue is not yet ripe because the appeal in case 172 has not been decided, (2) defendant has forfeited this issue, and (3) notwithstanding forfeiture, defendant's speedy-trial right was not violated because he was tried within 160 days from the date the court sentenced him in cases 60, 61, and 62. Defendant replied cases 60, 61, and 62 were not listed in his March 2004 speedy-trial demand and thus cannot be considered in determining the speedy-trial period in this case.

### 1. Ripeness

The State first contends this issue is not ripe for review because defendant's entire argument rests on this court's decision on the appeal in case 172, which had yet to be decided.

However, since the parties have filed their briefs, this court has decided defendant's appeal in case 172. See People v. Gay, No. 4-05-0915 (November 6, 2007), ___ Ill. App. 3d ___, ___ N.E.2d ____. Accordingly, defendant's argument is ripe for review.

## 2. Forfeiture

The State also alleges defendant has forfeited his speedy-trial challenge by failing (1) to invoke the intrastate detainers statute, (2) to apply for discharge prior to his conviction, and (3) to raise the speedy-trial issue in his posttrial motion.

The State is correct (1) the intrastate detainers statute applies to defendant since he was incarcerated in DOC while his charges were pending (see 730 ILCS 5/3-8-10 (West 2004)) and (2) defendant was required to make his speedy-trial demand in accordance with that statute as a precondition to the running of the speedy-trial period (People v. Staten, 159 Ill. 2d 419, 428-29, 639 N.E.2d 550, 555 (1994)). However, it is incorrect the defendant failed to do that. The record shows defendant was in DOC when he filed his March 2004 speedy-trial demand, and he specifically indicated in the written demand that it was pursuant to the intrastate detainers statute. Accordingly, we find defendant properly invoked his speedy-trial right under the intrastate detainers statute.

Further, as we stated in defendant's appeal in case 172, a speedy trial is a substantial, fundamental right, thus

defendant's claim is reviewable under the plain-error doctrine (134 Ill. 2d R. 615(a)) despite his failure to raise the issue in the trial court.  Gay, slip op. at 6, ___ Ill. App. 3d at ___, ___ N.E.2d at ____.  Thus, we will review defendant's claim.

### 3. Merits

The intrastate detainers statute provides for the application of subsections (b), ©), and (e) of section 103-5 of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/103-5(b), ©), (e) (West 2004)).  730 ILCS 5/3-8-10 (West 2004). Section 103-5(b) of the Procedure Code (725 ILCS 5/103-5(b) (West 2004)) requires an inmate to be tried within 160 days of the defendant's speedy-trial demand.  Section 103-5(e) of the Procedure Code (725 ILCS 5/103-5(e) (West 2004)) provides, in pertinent part, the following:

> "If a person *** simultaneously demands
> trial upon more than one charge pending
> against him in the same county, he shall be
> tried *** upon at least one such charge
> before expiration relative to any of such
> pending charges of the period prescribed by
> subsections (a) and (b) of this [s]ection
> [(725 ILCS 5/103-5(a), (b) (West 2004))].
> Such person shall be tried upon all of the
> remaining charges thus pending within 160
> days from the date on which judgment relative
> to the first charge thus prosecuted is

- 8 -

rendered ***."

Thus, when a defendant makes simultaneous speedy-trial demands on multiple pending charges, section 103-5(e) tolls the speedy-trial period for all but one of the charges until a judgment is rendered on the first charge. A judgment is rendered on a charge when the trial court has sentenced the defendant on that charge. People v. Ike, 10 Ill. App. 3d 933, 933-34, 295 N.E.2d 250, 251 (1973).

In Gay, slip op. at 8-9, ___ Ill. App. 3d at ___, ___ N.E.2d at ___, this court concluded a judgment was rendered on defendant's first charge for purposes of section 103-5(e) on July 22, 2005, when the trial court sentenced defendant in cases 60, 61, and 62. In so concluding, this court rejected defendant's argument that cases 60, 61, and 62 should not be considered in determining the speedy-trial period because defendant did not include them in his March 2004 speedy-trial demand. See Gay, slip op. at 9-10, ___ Ill. App. 3d at ___, ___ N.E.2d at ___. Thus, under section 103-5(e) of the Procedure Code (725 ILCS 5/103-5(e) (West 2004)), defendant had to be tried in this case within 160 days after July 22, 2005.

Here, defendant's trial commenced on November 7, 2005, which was 108 days after July 22, 2005. Moreover, some of the delay between July 2005 and November 2005 was attributable to defendant. Accordingly, we find defendant was tried well within the applicable speedy-trial period, and thus no violation occurred.

B. Questioning of Jurors

Defendant also asserts the trial court erred by failing to hold an _in camera_ questioning of jurors Rients and Gibson about the names of their friends who were correctional officers at Pontiac.

A defendant's right to a jury trial mandates a fair trial by a panel of impartial jurors. _People v. Gregg_, 315 Ill. App. 3d 59, 65, 732 N.E.2d 1152, 1157 (2000). _Voir dire_'s purpose is "to assure the selection of an impartial panel of jurors free from either bias or prejudice." _People v. Williams_, 164 Ill. 2d 1, 16, 645 N.E.2d 844, 850 (1994). The trial court possesses the primary responsibility for both initiating and conducting the _voir dire_ examination, and the manner and scope of that examination lies within that court's discretion. _Williams_, 164 Ill. 2d at 16, 645 N.E.2d at 850. Thus, defendant's argument on appeal asserting the court should have further questioned two jurors is a challenge to the trial court's discretion, not a question of law as defendant contends.

This court will only find an abuse of discretion when, after reviewing the record, we find the court's conduct "thwarted the selection of an impartial jury." _Williams_, 164 Ill. 2d at 16, 645 N.E.2d at 850. In evaluating a court's exercise of discretion during the _voir dire_, we examine "whether the questions posed and the procedures employed have created reasonable assurance that prejudice would be discovered if present." _People v. Sanders_, 143 Ill. App. 3d 402, 405, 493

N.E.2d 1, 3 (1986). "Reasonable limitations on voir dire do not deprive a litigant of his right to an impartial jury." People v. Tenney, 347 Ill. App. 3d 359, 368, 807 N.E.2d 705, 714 (2004). Moreover, voir dire questions should confirm a prospective juror's ability to set aside feelings of bias and decide the case on the evidence presented. Tenney, 347 Ill. App. 3d at 368, 807 N.E.2d at 714.

We disagree with defendant the trial court needed to obtain the names of Rients's and Gibson's friends who were correctional officers to reasonably assure the discovery of any prejudice. Here, the jurors in question both denied knowing defendant and any of the witnesses in this case. They both denied their relationship with correctional officers would cause them to favor one side or the other and indicated they could be fair and impartial. When asked if their friends had been involved in bringing the complaint against defendant or involved in that type of investigation, both jurors indicated they did not really discuss those things with them. Moreover, Gibson denied ever hearing stories about Pontiac, and Rients indicated he did not discuss DOC business with his friends. Both jurors indicated they neither feared retaliation against their friends nor worried about their friends taunting them if the jury found defendant not guilty.

Since the two jurors stated they had not heard about any incidents at Pontiac and did not know defendant or any of the witnesses in this case, one can safely assume that, if Rients's

- 11 -

and Gibson's correctional-officer friends had been involved with defendant in another incident, Rients and Gibson were unaware of it.  Defendant fails to argue how he could possibly be prejudiced by the jurors' friends' involvement in an incident with him if the jurors were unaware of such an incident.  We see no potential prejudice.  Accordingly, no further questioning was warranted on the issue of Rients's and Gibson's correctional-officer friends to assure the discovery of any prejudice.  Thus, the trial court did not abuse its discretion by failing to question the jurors <u>in camera</u> about the names of their correctional-officer friends.

### III. CONCLUSION

For the reasons stated, we affirm defendant's conviction and sentence.  As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal.        Affirmed.

COOK and STEIGMANN, JJ., concur.