Filed 7/9/08          NO. 4-07-0214

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|      Plaintiff-Appellee, | ) | Circuit Court of |
|      v. | ) | McLean County |
| MYRON D. BOSTON, | ) | No. 06CF67 |
|      Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Kevin P. Fitzgerald, |
| | ) | Judge Presiding. |

_____

JUSTICE McCULLOUGH delivered the opinion of the court:

A jury found defendant, Myron D. Boston, guilty of two counts of criminal sexual assault (720 ILCS 5/12-13(a)(1) (West 2004)) and the trial court sentenced him to two consecutive five-year prison terms. Defendant appeals, arguing (1) he was denied his right to a fair trial because the State improperly indoctrinated prospective jurors with its view of the case and predisposed them to accept its theories; (2) he was denied his right to a fair trial when the court allowed the jury to have transcripts of the victim's testimony, which overemphasized her version of the facts; and (3) the State failed to prove him guilty of the charged offenses beyond a reasonable doubt. We reverse and remand for a new trial.

The parties are familiar with the evidence presented and we discuss it only to the extent necessary to put their arguments in context. On January 18, 2006, the grand jury

indicted defendant on two counts of criminal sexual assault (720 ILCS 5/12-13(a)(1) (West 2004)), alleging he knowingly, by the use of force or threat of force, committed acts of sexual penetration with the victim, K.B., involving defendant's hand and penis and K.B.'s vagina. In July 2006, defendant's jury trial began but it resulted in a mistrial based on a deadlocked jury.

On October 10, 2006, defendant's second jury trial began. Evidence presented showed defendant and K.B. had a tumultuous, on-again, off-again dating relationship. K.B. testified defendant was physically abusive and jealous and often accused her of being with other men. Over the course of their relationship, K.B. obtained two orders of protection against defendant and, in November 2004, she contacted police, alleging he strangled her with a belt rope and forced her to have sex. K.B. stated she had one of the protection orders dismissed after being pressured by defendant and was encouraged by defendant to recant her allegations in connection with the November 2004 incident. The second order of protection remained in effect as of the date of the alleged offenses. K.B. acknowledged that, despite those incidents, she always resumed contact with defendant and the two often engaged in consensual sexual intercourse.

K.B. testified the incidents in question occurred following a trip she took to Chicago in November 2005. After returning from the trip, K.B. invited defendant to her home. She

testified he questioned her about her trip and accused her of being with another man. K.B. asserted defendant became angry, called her names, and committed the alleged offenses.

The evidence showed defendant denied any sexual contact with K.B. on the date of the alleged offenses. Later, however, he acknowledged it had occurred but asserted it was consensual. Defendant's theory of the case was that any sexual activity between him and K.B. was consensual and she made her allegations against him because she was angry about his decision to end their relationship.

On October 12, 2006, a jury found defendant guilty of both criminal-sexual-assault counts. On October 18, 2006, defendant filed a posttrial motion for a new trial. Relevant to this appeal, he alleged (1) the State failed to prove him guilty of the charged offenses beyond a reasonable doubt and (2) the trial court erred by providing the jury with a transcript of K.B.'s trial testimony during deliberations. On December 15, 2006, the court denied defendant's posttrial motion and sentenced him to two consecutive five-year prison terms. On December 21, 2006, defendant filed a motion to reconsider his sentence. On February 16, 2007, the court denied the motion.

This appeal followed.

On appeal, defendant first argues he was denied his right to a fair trial as a result of the State's actions during

voir dire. Specifically, he contends the State asked prospective jurors questions that improperly indoctrinated them with the State's view of the facts and predisposed them to accept its theory of the case.

The State and defendant agree that the defendant failed to properly preserve this issue for appellate review by failing to object to the State's voir dire questions or raise the issue in a posttrial motion. See People v. Coleman, 227 Ill. 2d 426, 433, 882 N.E.2d 1025, 1028-29 (2008) ("[T]o preserve an issue for appellate review, a defendant must both object at trial and present the same issue in a written posttrial motion"). "However, the forfeiture rule is an admonition to the parties and not a jurisdictional limitation on the reviewing court." People v. Chapman, 379 Ill. App. 3d 317, 326, 883 N.E.2d 510, 517 (2007). Other reviewing courts have declined to apply forfeiture under circumstances similar to the ones in the case at bar. See People v. James, 304 Ill. App. 3d 52, 57-58, 710 N.E.2d 484, 489 (1999); People v. Bell, 152 Ill. App. 3d 1007, 1017, 505 N.E.2d 365, 372 (1987). We likewise decline to apply forfeiture and address the merits of the issue.

"A defendant's right to a jury trial mandates a fair trial by a panel of impartial jurors." People v. Gay, 377 Ill. App. 3d 828, 834, 882 N.E.2d 1033, 1038 (2007). "The purpose of voir dire is to assure the selection of an impartial panel of

- 4 -

jurors free from either bias or prejudice." People v. Williams, 164 Ill. 2d 1, 16, 645 N.E.2d 844, 850 (1994). "[V]oir dire questions should confirm a prospective juror's ability to set aside feelings of bias and decide the case on the evidence presented." Gay, 377 Ill. App. 3d at 835, 882 N.E.2d at 1038. They must "not directly or indirectly concern matters of law or instructions." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431, eff. May 1, 2007. Also, voir dire "is not to be used as a means of indoctrinating a jury, or impaneling a jury with a particular predisposition." People v. Bowel, 111 Ill. 2d 58, 64, 488 N.E.2d 995, 998 (1986).

Generally, questions about specific defenses are excluded from voir dire, i.e., questions about beliefs concerning mistaken identity, self-defense, or the defense of compulsion. People v. Mapp, 283 Ill. App. 3d 979, 986-87, 670 N.E.2d 852, 857-58 (1996). An exception exists for matters of intense controversy when "simply asking jurors whether they could faithfully apply the law as instructed [is] not enough to reveal juror bias and prejudice toward that defense." Mapp, 283 Ill. App. 3d at 987, 670 N.E.2d at 858. Examples of matters found to be controversial include the insanity defense, the intoxication defense, abortion, and the subject of interracial relationships. Mapp, 283 Ill. App. 3d at 987, 670 N.E.2d at 858.

The trial court has the primary responsibility for

- 5 -

initiating and conducting the <u>voir</u> <u>dire</u> examination.  <u>Williams</u>, 164 Ill. 2d at 16, 645 N.E.2d at 850.  The manner and scope of <u>voir</u> <u>dire</u> rests within the court's discretion.  <u>Williams</u>, 164 Ill. 2d at 16, 645 N.E.2d at 850.  "An abuse of *** discretion will be found only if, after a review of the record, it is determined that the conduct of the court thwarted the selection of an impartial jury."  <u>Williams</u>, 164 Ill. 2d at 16, 645 N.E.2d at 850.

Here, the State questioned the first panel of potential jurors as follows:

"MS. FOSTER [Assistant States Attorney]: *** First off, this is a case that involves a domestic relationship.  Is there anyone in the group that believes incidents that arise between people who have a dating relation- ship, so therefore, a domestic[-]type rela- tionship, should not be handled by the State, that that[ i]s something personal and the State should[ no]t become involved in those types of incidents? *** Now, can we all agre- e, and if you do[ no]t, just raise your hand, that regardless of the type or length of the relationship, that there must be consent before every sexual act between two people?

- 6 -

                     *** And is there anyone that believes if a
          person or a woman gets an order of protection
          against someone and then invites that person
          over that she has the [order of protection]
          against, does anyone believe that the invita-
          tion itself equals consent to a later sexual
          act? *** And along those same lines, the
          woman with the order of protection, if she
          invites that person over, is there anyone
          that believes the woman is responsible for
          anything violent that may happen after the
          person comes over? *** And is there anyone
          that believes a person consents to a sexual
          act if they do[ no]t scream or fight or kick
          or yell or scratch or hit?  Anyone require a
          victim to do any of those things while she[
          i]s being assaulted? ***."
The record reflects the State asked substantially similar ques-
tions of all potential jurors.

          We find the State's questions were improper and served
to pre-educate and indoctrinate jurors as to the State's theory
of the case.  Its questions highlighted factual details about the
case and asked prospective jurors to prejudge those facts.  The
defense of consent is not so intensely controversial that the

- 7 -

general rule against questions about specific defenses should be disregarded. Further, we note, the State's questions improperly concerned matters of law or instruction. The pattern jury instruction (Illinois Pattern Jury Instructions, Criminal, No. 11.63A, at 570 (4th ed. 2000) (hereinafter IPI Criminal 4th No. 11.63A)) was given to the jury and it provides as follows:

> "The word 'consent' means a freely given agreement to the act of [(sexual penetration) (sexual conduct)] in question. Lack of verbal or physical resistance or submission by the victim resulting from the use of force or threat of force by the defendant *** shall not constitute consent."

The State questioned prospective jurors about the lack of physical resistance during a sexual act, a matter directly covered by IPI Criminal 4th No. 11.63A.

The evidence in the case was close. The State's improper questions were asked of all prospective jurors and may have resulted in the selection of a jury that was neither fair nor impartial. We, therefore, reverse defendant's convictions and sentences and remand the cause to the trial court for a new trial. As a result of this holding, it is unnecessary to address defendant's remaining contentions.

For the reasons stated, we reverse the trial court's

- 8 -

judgment and remand for a new trial.

Reversed and remanded.

APPLETON, P.J., and KNECHT, J., concur.