# IN THE COURT OF APPEALS OF IOWA

No. 20-0201
Filed August 4, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**RANDELLE DENVER BROWN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

Randelle Brown appeals his convictions after a jury found him guilty of four charges. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Mullins, P.J., Schumacher, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**CARR, Senior Judge.**

Randelle Brown appeals after a jury found him guilty on charges of domestic abuse assault causing bodily injury, first-degree harassment, and obstruction of emergency communication.[1] He challenges the district court rulings denying his motions for mistrial and the court's failure to give a requested jury instruction.

**I. Background Facts and Proceedings.**

The State charged Brown with two counts of domestic abuse assault causing bodily injury as a third offender, one count of harassment in the first degree, and one count of obstruction of emergency communication based on the following events, which occurred in June 2019. C.J., who was in a relationship with Brown and about twenty-five weeks pregnant, called 911 from a convenience store near her home to request an ambulance transport her to the hospital for medical treatment. She reported that Brown slapped and punched her before grabbing her by the neck and throwing her against a wall. C.J. fell onto her stomach and informed medical personnel that she felt pain in her abdomen and experienced contractions. C.J. stated that Brown took her phone and threatened that he or his friends would kill her and her children if she went to the police. C.J. ran to the convenience store for help after escaping from a locked bedroom.

At Brown's trial, a paramedic who transported C.J. to the hospital and an emergency room nurse who treated C.J. each testified that they observed scratches or abrasions on the side of C.J.'s neck. Both testified that C.J. was

---

[1] The obstruction charge is a simple misdemeanor from which Brown has no right to appeal, but our supreme court granted Brown's application to treat his notice of appeal as an application for discretionary review. *See* Iowa Code § 814.6(1)(a)(1), (2)(d) (2019).

tearful and had elevated heart and respiratory rates. The sheriff's deputy who took C.J.'s statement at the hospital testified that C.J. was "crying hysterically" and "very upset." The deputy explained that C.J. stopped crying at some point but began again when asked who hurt her, becoming "very fearful and very timid to answer questions." The deputy also testified that he saw "redness [or] scratch marks" on the side of C.J.'s neck, dried blood behind her left ear, some redness beneath one eye, an abrasion on the left side of her temple, and a cut on the inside of her lip. The court admitted into evidence the photos the deputy took at the hospital to document C.J.'s injuries.

Although C.J. consistently gave the same version of events on the day in question, she provided a different explanation at trial. C.J. testified that she called 911 because she "had a severe anxiety attack and wanted to get checked out." C.J. explained that she did not think the ambulance would transport her to the hospital for an anxiety attack, so she invented a story about Brown hitting her. She testified that the mark on her neck occurred when she nicked herself with a razor and the blood behind her ear was the result of an infection from wearing cheap earrings.

At the close of evidence, the jury found Brown guilty as charged. The court entered judgment and sentenced Brown to serve five years on the domestic-abuse-assault convictions, two years on the harassment conviction, and thirty days in jail on the obstruction conviction. The court ordered the sentences to run concurrently.

**II. Motions for Mistrial.**

Brown challenges the denial of his motions for mistrial. Brown moved for a mistrial, alleging the prosecutor engaged in misconduct during voir dire and closing argument. We review the denial of a mistrial based on prosecutorial misconduct for an abuse of discretion. *See State v. Coleman*, 907 N.W.2d 124, 134 (Iowa 2018). To prove a claim of prosecutorial misconduct, a defendant must show that misconduct occurred that denied the defendant the right to a fair trial. *See id.* at 138. In determining whether to grant a defendant a new trial based on prosecutorial misconduct, we consider: "(1) The severity and pervasiveness of misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; [and] (5) the extent to which the defense invited the misconduct." *Id.* at 140 (quoting *State v. Boggs*, 741 N.W.2d 492, 508–09 (Iowa 2007)).

**A. Statements made during voir dire.**

Brown first moved for mistrial based on the prosecutor asking improper questions during voir dire that Brown argues were impermissibly suggestive. Because the parties waived reporting of jury selection, the only record of what occurred is contained in the parties' arguments on the motion for mistrial. Anticipating that C.J. would recant her prior statements, the prosecutor asked potential jurors their opinions about the State pursuing criminal charges against a defendant despite the complaining witness's objection or recantation. When one prospective juror answered that the State would need a good reason to do so, the prosecutor asked if anyone could think of a reason why a witness might oppose

prosecution or recant. Those who responded suggested "intimidation, threats, and coercion" as potential reasons. Brown's counsel then objected and moved for a mistrial, arguing the prosecutor's questions inappropriately suggested there was evidence that the State did not possess:

> The State is getting way too close to the facts of this case. The fact that the State knows it has a recanting witness, the State knows that it's intending to pursue charges against this complaining witness's wishes. What the State has now done is planted the idea in the jury's mind that the State has a good reason for doing this over this complaining witness's objection. It's an invitation for these jurors to make inferences based on evidence that the State knows is not going to come in the record.

Because Brown did not object until the prosecutor's question regarding why a complaining witness might not want to pursue criminal charges or might recant a prior statement, Brown failed to preserve error on any objection to the preceding questions. *See State v. Martin*, 877 N.W.2d 859, 865 (Iowa 2016) (holding that a defendant fails to preserve error on appeal by failing to object to a prosecutor's statements made during voir dire or to raise them to the district court as ground for a mistrial).

Brown has failed to establish that the trial court abused its discretion in denying a mistrial based on the prosecutor's voir dire question. Brown argues the State's strategy "is identical" to that addressed in *State v. Williams*, 427 P.3d 434, 441 (Utah Ct. App. 2018). But in *Williams*, the prosecutor proposed answers to hypothetical questions that no prospective juror suggested and made encouraging statements when a panel member gave the answer she was looking for. *See* 427 P.3d at 438-41. The Utah Court of Appeals concluded,

> The process employed by the prosecutor in this case was not designed to find out what jurors' thoughts or attitudes were, but

> instead served as an attempt to influence the jury panel—in effect intentionally tainting it with a bias favorable to the State's case. And while the prosecutor never couched her questions or comments by reference to a specific victim, it is clear, given the context, that the prosecutor was essentially arguing the State's case and inappropriately bolstering the anticipated testimony of the alleged victims.

*Id.* at 441. In contrast, the prospective jurors gave answers to the prosecutor's hypothetical question about why the State might pursue charges over the objections of a complaining witness who had recanted. Although there is no evidence to show that, after C.J. made her statements at the convenience store and Brown's subsequent arrest, Brown did any of the things the jurors proposed in their answers, like using threats, duress, or intimidation, there is no basis for concluding the prosecutor asked the question in order "to pre-educate and indoctrinate jurors as to the State's theory of the case." *People v. Boston*, 893 N.E.2d 677, 681 (Ill. App. Ct. 2008); *see also Williams*, 427 P.3d at 441 (quoting *Boston*, 893 N.E.2d at 681). Questions that seek "prospective jurors' general impressions and opinions" are "a proper subject of inquiry." *Martin*, 877 N.W.2d at 868.

## B. Statements made during closing argument.

Martin also claims the court abused its discretion in failing to order a mistrial based on the prosecutor's statements during closing argument.

At the end of her closing statement, the prosecutor told the jury:

> Ladies and gentlemen, as part of your job as jurors you're being tasked with judging the credibility of complete strangers, and no one said it was going to be an easy task. But that's what this case boils down to, whether or not you believe the tearful and hysterical statements made on June 22 or whether you believe what she said yesterday, that this was all a lie and she was just having an anxiety attack. There's enough evidence here for you to make that decision.

And if you decide that those statements made on June 22 were the truth, then the State has met their burden, the State has proven every element of the offenses. And the—

Brown's attorney objected, and an off-the-record-discussion took place. The court then overruled Brown's objection, and the prosecutor concluded by stating:

If you find that the statements she made on June 22, 2019, that explain everything that they explained, the State has met beyond a reasonable doubt the burden, has proven every element of each offense. And if you believe what she said in trial yesterday, then the defendant is not guilty.

Brown argues that by directing the jury to decide his guilt based solely on C.J.'s out-of-court statements, the prosecutor mischaracterized the burden of proof, violating *State v. Graves*, 668 N.W.2d 860, 880 (Iowa 2003). We disagree. In *Graves*, the court held the prosecutor distorted the burden of proof by stating that the jury must convict the defendant if it believed the testimony of a law enforcement officer. 668 N.W.2d at 880. The supreme court noted that "even if the jury believes the government witnesses have told the truth, it might still conclude guilt has not been proved beyond a reasonable doubt" because the officer's testimony did not establish all elements of the crime. *Id.* In contrast, C.J.'s statements to medical personnel and law enforcement in June 2019 satisfied the essential elements of the crimes with which the State charged Brown.

Brown also claims the prosecutor impermissibly vouched for the credibility of C.J.'s out-of-court statements during rebuttal. The prosecutor told the jury:

[W]hat I can tell you about domestic abuse is that the person being abused is the expert on how to keep themselves safe. I'm going to wait until the right time to escape my abuser so that I can get help for me and my unborn child. I'm going to go to Casey's where I can use a phone hysterically in public and cry on the phone to a 911 operator in public. I'm going to tell the 911 operator exactly what happened to me. I'm going to tell her just enough to where I can get

treated. Her main fear being her abdomen. But I'm not going to tell his name. If I go to Casey's and I call 911, I'm not calling the police. I'm just getting help for me. I'm just getting to the doctor. If I don't say his name, [Brown] can't get in trouble, and if they don't know his name, [Brown] can't go to jail. And all these things are going through her head and she is conscious enough of her safety and the safety of her children and the safety of her unborn child to get exactly what she needs to protect herself without saying his name.

Because there is no evidence in the record to support this argument, it was improper. But Brown did not object on this basis until after the case was submitted to the jury. The court noted had Brown objected earlier, it would have given the jury a clarifying or limiting instruction "to clean up any misconceptions." The court did instruct the jury that statements, arguments, questions, and comments by the attorneys are not evidence. Under the circumstances, the court did not abuse its discretion denying a mistrial.

Finally, Brown argues that during closing statements, the prosecutor misstated the evidence regarding how many witnesses testified to certain facts. But Brown raised the issue for the first time when responding to the State's resistance to his motion for new trial, and the court did not rule on it. Because error was not preserved for our review, we do not address this claim. *See State v. Manna*, 534 N.W.2d 642, 644 (Iowa 1995) ("Our preservation rule requires that issues must be presented to and passed upon by the district court before they can be raised and decided on appeal.").

**III. Jury Instruction.**

Brown also challenges the district court's denial of his request for a "true threat" jury instruction. Our review is for correction of errors at law. *See State v. Bynum*, 937 N.W.2d 319, 324 (Iowa 2020). Although we review the court's refusal

to give a requested jury instruction for error, our review is for an abuse of discretion when the jury instruction is not required but discretionary. *See id.*

The State charged Brown with first-degree harassment, which requires proof that, "with intent to intimidate, annoy, or alarm another person," he communicated to another a threat to commit a forcible felony without legitimate purpose in a manner likely to cause annoyance or harm. *See* Iowa Code § 708.7(1)(a)(1), (2)(a)(1). The trial court instructed the jury that in order to find Brown guilty of first-degree harassment, the State was required to prove Brown: (1) communicated with C.J. without a legitimate purpose in a manner likely to cause her annoyance or harm, (2) threatened that if C.J. called the cops, he would kill her or her children, and (3) did so with the specific intent to intimidate, annoy, or alarm C.J.

Brown argues the court erred in failing to give the jury a "true threat" instruction, which provides "threats" are "statements that would be understandable by a reasonable person of ordinary intelligence as threats, in light of the surrounding circumstances." *State v. Soboroff*, 798 N.W.2d 1, 10 (Iowa 2011). The purpose of the instruction is to prevent a person from being convicted for making a constitutionally protected statement. *See id.* Brown claims that because there is no evidence showing that he owned or had access to a firearm, the jury could have found his alleged statements that he or his friends would shoot C.J. were "merely idle talk or hyperbole." Our supreme court has held that the specific intent element of harassment under section 708.7 "does not require that the harasser have the present apparent ability to carry out the threats." *State v. Button*, 622 N.W.2d 480, 484 (Iowa 2001) (noting the statute provides that threat may be

communicated by telephone or mail). The court instructed the jury properly on the elements of first-degree harassment, and its refusal to give a true threat instruction was not error.

**AFFIRMED.**