2021 IL App (1st) 182537-U

No. 1-18-2537

Order filed January 8, 2021

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 6627 |
| | ) | |
| LEDARIUS JOHNSON, | ) | Honorable |
| | ) | Carol M. Howard, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Delort and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1   *Held*:  Defendant's sentence of 15 years' imprisonment for attempt aggravated criminal sexual assault is affirmed over his contention that the sentence was excessive in light of mitigating factors. The mittimus is corrected to reflect that defendant must serve two years' mandatory supervised release.

¶ 2   Following a bench trial, defendant Ledarius Johnson was convicted of attempt aggravated criminal sexual assault (720 ILCS 5/8-4 (West 2016); 720 ILCS 5/11-1.30(a)(2) (West Supp. 2015)), and sentenced to 15 years' imprisonment followed by 4 years to natural life of mandatory supervised release (MSR). On appeal, defendant contends that his sentence is excessive and his

MSR term does not comply with statute. We amend the mittimus to reflect a two-year term of MSR and affirm in all other respects.[1]

¶ 3     Defendant was charged by indictment with three counts of aggravated kidnapping, four counts of attempt aggravated criminal sexual assault, five counts of aggravated criminal sexual abuse, and three counts of aggravated battery.

¶ 4     At trial, N.N. testified, through a Russian interpreter, that around 8 p.m. on March 28, 2016, in Chicago, she exited a bus on the 2600 block of Chicago Avenue and crossed the street toward the building where her friend lived. She opened the locked exterior door, and a man grabbed her hair from behind and pushed her into the building and onto a staircase. N.N. tried to crawl up the stairs. She screamed and the man covered her mouth with his hand. In court, N.N. identified this man as defendant.

¶ 5     Defendant spread N.N.'s legs and positioned himself between them. He used one hand to cover her mouth, and with the other, touched her vagina. N.N. felt "extreme pain." She tried to strike defendant with a key and pointed toward her open purse and wallet. Defendant pulled his hand out of N.N.'s pants and choked her, with one hand on her mouth and the other on her neck, as she tried to scream. N.N. was on the verge of losing consciousness when she freed herself and shouted, "help." She heard voices upstairs. A man came down the stairs as defendant fled. N.N. lost consciousness and awoke to a woman helping her to her friend's unit. N.N. noticed she was covered in blood and cleaned herself. That night, outside the building, N.N. viewed defendant in police custody and identified him as the attacker.

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

¶ 6      The State published several video clips. In footage from the bus, N.N. identified herself and the attacker, whose face is visible and wearing a green jacket and a red sweatshirt. The man occasionally stares at N.N., sits beside her when the neighboring seat is vacated, and exits from the rear of the bus when N.N. exits from the front. Footage from a building on Chicago shows the man following N.N. across the street. N.N. also identified photographs of her injuries taken at the police station on the night of the incident, including a bruise on her left knee, red marks on her face and neck, and a cut inside her mouth.

¶ 7      On cross-examination, N.N. testified that, once she entered the exterior door to the building, defendant pulled her hair and pushed her into the stairs. She screamed, and defendant put his hand on her mouth before squeezing her neck "[v]ery" hard. Defendant put his hands inside her underwear. N.N. denied telling a detective that he rubbed her vagina over her underwear. On redirect, N.N. identified a green jacket and red sweatshirt in court as clothes that defendant wore on March 28, 2016.

¶ 8      Dayizah Flowers testified she was on the bus and observed a man in a green jacket and a red sweater watching a woman. She identified the man as defendant in court. Flowers exited the bus at the same stop as the woman and defendant. Defendant followed the woman across the street and pushed her into a building. Flowers heard screaming, saw the woman kicking, and called the police. Flowers denied telling a detective that she had planned to go to a liquor store at Rockwell Street and Chicago.

¶ 9      Devin Bermudez testified that on the evening of March 28, 2016, he heard a "loud shrill" noise outside his unit in the building. He descended the stairs and saw a man lying on top of N.N.,

saying, "shush, shush." The man tried to wave Bermudez off and stated they were "cool." Bermudez identified defendant in court.

¶ 10    Bermudez continued down the stairs, and defendant ran from the building. Bermudez chased defendant, but lost sight of him after defendant shouted that he had a firearm. Bermudez flagged officers down and directed them to where he last saw defendant. The officers found and detained defendant, whom Bermudez identified as the attacker. The State published a video from another building on the 2600 block of Chicago, wherein Bermudez identified himself chasing defendant.

¶ 11    Chicago police officer Alfredo Chavez testified that he responded to a call on the 2600 block of West Chicago and encountered Bermudez, who identified the property where he thought defendant was located. Officer Chavez found defendant and arrested him. He identified defendant in court.

¶ 12    The court granted defendant's motion for directed finding as to the count of aggravated battery on a public way. Then, defendant entered stipulations that N.N. told a detective that "the offender put his hand inside her pants and rubbed her vagina over her underwear," and that Flowers told a detective that she had intended to go to the liquor store at Rockwell and Chicago.

¶ 13    Defendant testified that on March 28, 2016, after riding several buses, he spoke on his cellphone with a friend who told him to exit the bus on Chicago. Defendant first waited on the street corner for his friend to arrive, and then crossed the street. On the other side of the street two men approached him and one "said something crazy." Defendant fled and hid, and officers later arrested him. Defendant denied assaulting a woman and putting his hand down a woman's pants in a stairway.

¶ 14     On cross-examination, defendant identified himself as the man in several of the State's videos. He told officers, after he was arrested, that he exited the bus at the wrong stop.

¶ 15     Following arguments, the court found defendant guilty of three counts of attempt aggravated criminal sexual assault, four counts of aggravated criminal sexual abuse, and two counts of aggravated battery, and acquitted him of the remaining counts. Defendant filed a motion for new trial, which was denied.

¶ 16     Defendant's presentencing investigation report (PSI) reflected that he was 18 years old at the time of the offense, diagnosed with a learning and behavior disability, and had been enrolled in special education but did not finish high school because he "went to jail." Defendant reported that he had been diagnosed as bipolar. Defendant belonged to the Vice Lord street gang from age 13 until his incarceration, had one child, and did not work. He smoked marijuana daily from ages 13 to 18 and used pills—mainly ecstasy—from ages 17 to 18. He used PCP weekly when he was 18, and "admit[ted] to having trouble remaining abstinent." Defendant's criminal history included juvenile adjudications for theft from a person and unlawful use of a weapon; for the former offense, he violated his probation and was imprisoned, and for the latter he was imprisoned.[2]

¶ 17     In aggravation, the State emphasized the serious emotional and physical harm N.N. suffered, and that the intervention of a "good Samaritan" prevented "a more horrible fate." The State raised defendant's history of delinquency and crime, noting that he violated probation 17 times after his adjudication for theft. The State also read a victim impact statement from N.N., stating that she lived in "constant fear" and was diagnosed with depression and high anxiety.

---

[2] The PSI stated that defendant was found guilty of robbery, but at sentencing, the State explained that he pleaded guilty to theft from a person.

¶ 18     The defense rested on the mitigation provided in the PSI, and defendant waived his right to allocution.

¶ 19     In announcing sentence, the court found in aggravation that, but for the intervention of a neighbor, "the assault would have probably been much worse," and noted defendant's criminal history. In mitigation, the court "considered the factors set forth in the PSI." The court merged all counts into one count of attempt aggravated criminal sexual assault and sentenced defendant to 15 years' imprisonment followed by MSR of four years to natural life.[3]

¶ 20     The court denied defendant's oral motion to reconsider sentence without argument.

¶ 21     On appeal, defendant first argues that his 15-year sentence was excessive given his youth, cognitive impairments, and drug addiction.

¶ 22     To begin, we note, as does the State, that defendant made an oral motion to reconsider sentence and did not file a written motion. Generally, "to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). However, the requirement to file a written motion is waived where a defendant makes an oral motion to reconsider his sentence and, as here, the State does not object. *People v. Shields*, 298 Ill. App. 3d 943, 950-51 (1998). Consequently, we may address "sentencing issues on appeal based on any ground that appears in the record." *People v. Davis*, 356 Ill. App. 3d 725, 731 (2005).

---

[3] Defendant's mittimus states that the findings of guilt merged into count V for attempt aggravated criminal sexual assault, but at the sentencing hearing, the court stated that the findings merged into count IV for that offense. Under Illinois Supreme Court Rule 472 (eff. May 17, 2019), defendant may file a motion in the circuit court to correct the mittimus accordingly.

¶ 23 Under the Illinois Constitution, a trial court shall impose a sentence that reflects both "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11; *People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 27. "[T]he trial court has broad discretionary powers in imposing a sentence." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). The trial court receives "substantial deference" on sentencing decisions because the court, having directly observed the defendant and the proceedings, is in the superior position to weigh factors including "the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36.

¶ 24 A sentence within statutory guidelines is presumed proper (*People v. Knox*, 2014 IL App (1st) 120349, ¶ 46) and will only be disturbed where there is an abuse of discretion (*People v. Jones*, 168 Ill. 2d 367, 373-74 (1995)). An abuse of discretion exists where a sentence within statutory limits is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210. In reviewing a defendant's sentence, this court "must not substitute its judgment for that of the trial court merely because it would have weighed [the] factors differently." (Internal quotation marks omitted.) *People v. Alexander*, 239 Ill. 2d 205, 213 (2010).

¶ 25 We presume "that the trial court properly considered all mitigating factors and rehabilitative potential before it, and the burden is on defendant to affirmatively show the contrary." *People v. Johnson*, 2020 IL App (1st) 162332, ¶ 95. Ultimately "the seriousness of an offense, and not mitigating evidence, is the most important factor in sentencing" (*People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11), and "the presence of mitigating factors neither requires a

minimum sentence nor precludes a maximum sentence" (*People v. Jones*, 2014 IL App (1st) 120927, ¶ 55).

¶ 26    Attempt aggravated criminal sexual assault carries a sentencing range of 4 to 15 years' imprisonment. 720 ILCS 5/8-4 (West 2016); 720 ILCS 5/11-1.30(a)(2)  (West Supp. 2015); 730 ILCS 5/5-4.5-30 (West 2016).

¶ 27    Here, the 15-year sentence was within statutory guidelines, and therefore, presumptively proper. *Knox*, 2014 IL App (1st) 120349, ¶ 46. Further, defendant engaged in an ongoing course of dangerous conduct before and during the offense. Defendant noticed N.N. on a bus and followed her to the hallway of a building, pulled her hair and strangled her, and caused her "extreme pain" during the attempted sexual assault. This attack was only stopped due to the intervention of a neighbor. As a result of the attack, N.N. lost consciousness and had a bruise on her left knee, red marks on her face and neck, and a cut inside her mouth. According to N.N., she also lived in constant fear and was diagnosed with depression. See *People v. Saldivar*, 113 Ill. 2d 256, 271 (1986) (in determining the degree of harm caused by the defendant, the trial court may consider the force employed, the physical manner in which the victim's injuries occurred, and the extent of the victim's injuries).

¶ 28    As for the mitigating factors, the court considered the factors in the PSI, which included defendant's age, mental capacity, and drug use. While defendant asserts that "the principle that minors are inherently less culpable and more likely to be rehabilitated applies" to him, he was not a minor at the time of the offense. His criminal history included juvenile adjudications for theft from a person and unlawful use of a weapon, and until being incarcerated, defendant was a gang member and unemployed. The trial court, moreover, was not required to view defendant's drug

abuse as a mitigating factor (*People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 108), and although the PSI reflected that he had a learning and behavior disability, no evidence showed that either condition related to his conduct during the offense. Given that the trial court was in the best position to judge these factors, we will not now reweigh them. *Snyder*, 2011 IL 111382, ¶ 36. Because defendant does not demonstrate that the sentence is "greatly at variance with the spirit and purpose of the law, or is manifestly disproportionate to the nature of the offense," we find that the court did not abuse its discretion in sentencing defendant to 15 years' imprisonment. See *Stacey*, 193 Ill. 2d at 210.

¶ 29    Defendant also argues, and the State agrees, that his MSR term of four years to natural life exceeded the term mandated by statute. We review this question of law *de novo*. *People v. Denis*, 2018 IL App (1st) 151892, ¶ 89.

¶ 30    Defendant here was convicted of attempt aggravated criminal sexual assault, which requires a two-year term of MSR. 730 ILCS 5/5-4.5-30(*l*) (West 2016). Because the trial court had no discretion in imposing a longer term, we order that the mittimus be corrected to reflect an MSR term of two years. Ill. S. Ct. R. 615(b) (eff. June 1, 2020); *People v. McCurry*, 2011 IL App (1st) 093411, ¶ 27.

¶ 31    Accordingly, we affirm the judgment of the circuit court of Cook County and order that defendant's mittimus be amended.

¶ 32    Affirmed; mittimus amended.